## UNITED STATES

### v.

### Jeffrey S. SUNZERI, Cryptologic Technician (Maintenance) Second Class (E–5), U.S. Navy.

### NMCCA 200202248.

U.S. Navy–Marine Corps Court
of Criminal Appeals.

Sentence Adjudged 27 June 2002.

Decided 8 March 2004.

---

LT Colin A. Kisor, JAGC, USNR, Appellate Defense Counsel.

LT C.J. Hajec, JAGC, USNR, Appellate Government Counsel.

Before DORMAN, Chief Judge, VILLEMEZ, and HARRIS, Appellate Military Judges.

DORMAN, Chief Judge.

The appellant stands convicted by a general court-martial composed of a military judge sitting alone. Consistent with his pleas, he was convicted of possessing drug paraphernalia, use of marijuana, and use, possession, and distribution of methylenedioxymethamphetamine (ecstasy). These offenses violated Articles 92 and 112a, Uniform Code of Military Justice, 10 U.S.C. §§ 892 and 912a. The adjudged and approved sentence includes a bad-conduct discharge, confinement for 10 months, and reduction to pay grade E-1.

The appellant has raised two assignments of error. First, he alleges that a provision of his pretrial agreement prohibiting him from presenting the testimony of witnesses located outside of Hawaii, either in person, by telephone, by letter, or by affidavit, violated public policy. Second, he contends that the trial counsel committed prosecutorial misconduct and plain error when he expressed his personal opinion during argument on sentencing. As relief for each assigned error, the appellant asks that we set aside the sentence and authorize a new sentencing hearing. Finding merit in the appellant's first assignment of error, we will grant relief, mooting any need for discussion of the appellant's second assignment of error.

We have thoroughly examined the record of trial and have considered the appellant's assignments of error, and the Government's response. Following that examination, we conclude that the findings are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed with respect to the findings. Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c). We also find that because a provision in the appellant's pretrial agreement violated public policy, the sentence must be set aside.

### Facts

The appellant was tried at Naval Station, Pearl Harbor, Hawaii. Prior to the appellant entering pleas, he successfully litigated a motion for the production of two witnesses. Record at 240. Specifically, the appellant sought help from the military judge in securing the attendance of the appellant's father and his best friend "to testify at trial on the merits." Appellate Exhibit I at 4. In his Motion raising this issue, the appellant also asserted that his father's testimony was "relevant and necessary . . . during the presentation of a sentencing argument (sic) to assist the trier of fact determine (sic) an appropriate sentence, if applicable: . . ." *Id.* at 3. Eventually the appellant decided to plead guilty, and he entered into a pretrial agreement with the convening authority. Paragraph 18c of that agreement provides, "[t]hat, as consideration for this agreement, I will not require the Government to provide for the personal appearance of witnesses who reside off the island of Oahu to testify during the sentencing phase of the court-martial[.]" Appellate Exhibit XI at 4. Paragraph 18f

further restricted the appellant's ability to present evidence during the sentencing phase of his court-martial. It reads as follows:

> That, as consideration for this agreement, the government and I agree not to call any off island witnesses for presentencing, either live or telephonically. Furthermore, substitutes for off island witness testimony, including but not limited to, Article 32 testimony, affidavits, or letters will not be permitted or considered when formulating an appropriate sentence in this case.

*Id.*

Although the military judge apparently had no concerns with respect to paragraph 18c, he did consider rejecting paragraph 18f. Record at 270–72. Before accepting this provision the military judge determined that it had been proposed by the appellant, and that it was "aimed to prevent the government from introducing specific items of evidence in the sentencing proceeding." *Id.* at 271. The appellant informed the military judge that were it not for this provision, he would have presented evidence from his father and from his best friend during the sentencing phase of the court-martial. Earlier in the proceedings the military judge had determined that the Government would be required to produce these two witnesses. *Id.* at 240, 271–72. The appellant also informed the military judge that he believed it was in his best interest to enforce this provision. *Id.* at 272. Following this discussion the military judge determined that he would enforce the provision. He stated:

> Based on the posture of this case and the fact that this was a term initially proposed by the defense and based on what the defense has disclosed on the record that they are precluded from presenting in this case in return for this provision and tactically that they believe that is in their best interest and they want this provision enforced under the facts of this case, while I might normally consider this particular provision to be unenforceable and contrary to the rule and public policy, at this point I find that Petty Officer Sunzeri and [his trial defense counsel] certainly have made

a knowing and intelligent balance of the cost-benefit analysis here and believe tactically that it is in the defense's best interest to have this provision enforced, and I will, in fact, enforce it.

*Id.* at 272.

## Pretrial Agreement

■ The appellant argues that paragraph 18f of his pretrial agreement violates public policy. He cites to no specific binding case authority, though he does reference RULE FOR COURTS-MARTIAL 705(c)(1)(B), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2002 ed.) That rule provides, in part, that, "A term or condition in a pretrial agreement shall not be enforced if it deprives the accused of: ... the right to complete sentencing proceedings ...." In reviewing a pretrial agreement a military judge is required to strike any provision which he finds to violate "appellate case law, public policy, or the trial judge's own notions of fundamental fairness...." *United States v. Green*, 1 M.J. 453, 456 (C.M.A.1976). While we review the military judge's determination of whether a clause violates his own notions of fundamental fairness under an abuse of discretion standard, *United States v. Cassity*, 36 M.J. 759, 762 (N.M.C.M.R.1992), in reviewing questions of whether the challenged provision violates appellate decisions or public policy we apply a *de novo* standard of review. *See United States v. Libecap*, 57 M.J. 611, 615 (C.G.Ct.Crim.App.2002).

What provisions violate appellate case law is determined by reference to precedent. Determining what provisions violate "public policy" is potentially more troublesome. Appellate case law, its sources, and R.C.M. 705 are, themselves, statements of public policy. The United States Court of Military Appeals has observed that a pretrial agreement provision that "substitutes the agreement for the trial, and, indeed, renders the latter an empty ritual" would violate public policy. *United States v. Cummings*, 17 U.S.C.M.A. 376, 38 C.M.R. 174, 178, 1968 WL 5361 (1968). Beyond that, however, the Court of Military Appeals "has not articulated any general approach to pretrial agreement conditions

that can be used to determine which conditions are permissible and which are to be condemned. An analysis of the cases suggests, however, that the court will disapprove those conditions that it believes are misleading or [abridge] fundamental rights of the accused...." 1 Francis A. Gilligan & Frederick I. Lederer, *Court–Martial Procedure* § 12–25.20 (1991).

. . .

Identifying the sponsor of a questioned provision—Government or defense—has been helpful in determining whether the provision's inclusion in a pretrial agreement violates public policy.

*Cassity*, 36 M.J. at 761–62.

■ The appellant proposed the now-challenged provision of his pretrial agreement. Furthermore, although the provision restricted his ability to present certain evidence during the sentencing portion of his court-martial, it also placed the same restriction upon the Government. In fact, at trial the appellant, through counsel, indicated that the provision was intended to prevent the Government from introducing specific items of evidence. The appellant got precisely what he bargained for. That being said, however, absent specific appellate guidance on the provision we have before us, we must answer the question, "Did this provision deprive the appellant of a complete sentencing proceeding?" We conclude that it did.

First, R.C.M. 705(c)(1)(B) is very specific in providing that certain conditions can never be included in pretrial agreements. Absent decisional authority, that Presidential rule should be afforded its plain meaning. *See, e.g., United States v. Davis,* 47 M.J. 484 (C.A.A.F.1998)(holding that when the President affords servicemembers certain rights in the Manual for Courts–Martial, appellate courts are not free to disregard those rights). To find that the appellant had been afforded a complete sentencing hearing, when he was unable to present any evidence from individ-

uals who did not live on the island of Oahu, would simply ignore the plain meaning of "complete sentencing hearing," particularly so where the appellant told the military judge that but for the provision he would have presented more evidence. We, unlike our dissenting colleague, find no ambiguity in this language, and thus no need to redefine what we believe to be its commonly understood meaning.[1] In construing the language of a statute or rule, it is generally understood that the words should be given their common and approved usage." *United States v. McCollum,* 58 M.J. 323, 340 (C.A.A.F.2003). Were we to go down the road charted by our dissenting colleague, appellate courts would soon be obfuscating Manual language which, in its simplicity, needs no further definition.

Second, the fact that R.C.M. 705(c)(2)(E) allows for a pretrial agreement to provide for the waiver of the right to the personal appearance of witnesses at a sentencing hearing, lends support to a strict, yet basic, reading of R.C.M. 705(c)(1)(B). In providing for the waiver of the right to personal witnesses in sentencing proceedings, it seems clear that the President authorized that as the sole limitation to the general rule that the accused is entitled to "complete sentencing proceedings." Even *United States v. Jones,* 23 M.J. 305 (C.M.A.1987), which the Government relies upon, can be used as support for finding that this provision violates public policy.

What we are left with, then, is a defense judgment that its proposal was in the best interests of the accused and a well-orchestrated effort to achieve a successful outcome. Neither the judgment nor the elected tactical approach violates any public norm. An accused is allowed to attempt orchestration of that stage in the process. Only actions which may reasonable be construed as attempts to orchestrate the trial proceeding itself will be rebuffed.

1. The dissent states that of the protected rights under R.C.M. 705(c)(1)(B), the right to a complete sentencing proceeding is "perhaps the least clear and the most difficult to define," contrasting that right to the right to due process. We find just the opposite, citing for example the

volumes of appellate decisions that have attempted to determine just what process is due. While in some cases, it may be difficult to determine whether an accused was deprived of a complete sentencing proceeding, this is not such a case.

*Id.* at 307 (footnote omitted). In *Jones,* our superior court upheld a provision in a pretrial agreement in which the accused had agreed to waive some pretrial motions concerning issues that would have been waived by the accused's guilty plea anyway. Such an action could hardly be said to be one orchestrating the trial proceedings themselves. Furthermore, the court noted in *Jones* that counsel's statements that there were issues he would have raised appeared to be " 'puffing' support for his election and tactic to persuade his case into a prearranged deal." *Id.* at 307. In the case before us, there is no puffing. The appellant had litigated and won a motion requiring the Government to produce the two witnesses.

Third, there has been a move towards approving pretrial agreement provisions that originate with the appellant. *United States v. Weasler,* 43 M.J. 15 (C.A.A.F.1995); *Jones,* 23 M.J. at 305; and *United States v. Rivera,* 44 M.J. 527 (A.F.Ct.Crim.App.1996). There has also been a trend to allow provisions that bargain away rights that would have been waived by failing to raise them in a timely manner. *See United States v. Edwards,* 58 M.J. at 49 (C.A.A.F.2003); *Weasler,* 43 M.J. at 15; *United States v. Gibson,* 29 M.J. 379 (C.M.A.1990); and *Jones,* 23 M.J. at 305. None of these cases, however, have squarely dealt with R.C.M. 705(c)(1)(B), and neither the Government nor our dissenting colleague has cited a single case that suggests that we should ignore the very specific prohibition contained in that Rule. Furthermore, while *Weasler* upholds a pretrial agreement provision that required the accused to waive a motion concerning unlawful command influence, because to do "otherwise would deprive [the] appellant of the benefit of his bargain," *Weasler,* 43 M.J. at 19, the provision was not specifically prohibited by R.C.M. 705. Additionally, the Court of Appeals for the Armed Forces also found beyond a reasonable doubt that *Weasler* was not subjected to any unlawful command influence. As noted by Judge Mollison in his *Cassity* decision, "[t]he rules of the marketplace, however, are not permit-

ted to operate unregulated in the military justice system. Despite the mutual assent of the parties, the propriety of a particular pretrial agreement provision and its operation in the case must be assessed in view of the basic tenets of the military justice system." *Cassity,* 36 M.J. at 762. We find R.C.M. 705(c)(1)(B) to be one of those tenets, and a very clear one at that.[2]

While we fully understand the "policy" arguments advanced by the Government and our colleague, we are constrained to apply the law. We note that in advancing these policy arguments there has been no citation to a single case wherein either our superior court or this court has enforced a term of a pretrial agreement that arguably violated R.C.M. 705(c)(1)(B). That rule narrowly proscribes the area in which the President has determined a pretrial agreement may not be used to restrict the rights of the accused. The proposal before us did just that, in violation of that rule—in violation of public policy.

The Government further argues that even if the challenged provision violates public policy, the appellant was not prejudiced. We cannot reach that conclusion. The appellant was denied a complete sentencing hearing. To say that the testimonies or affidavits of the appellant's father and best friend would have had no impact on the sentencing authority is nothing but speculation. Knowing that trial defense counsel seldom reveal their hand to the Government, even in pretrial motions, we cannot with any confidence know the nature of the evidence that these two witness would have provided, nor what their impact would have been. To suggest otherwise discounts the value of parental testimony.

### Conclusion

Accordingly, the findings are affirmed. With respect to the sentence, we find that the only appropriate remedy is to set it aside and return the case to the Judge Advocate General of the Navy. He may then return the case to the convening authority who may order a rehearing on sentencing or approve a

---

**2.** We note an early decision decided by the Army Board of Review in which it stuck down a pretrial agreement provision that precluded offering any evidence in extenuation or mitigation. *Unit-* *ed States v. Callahan,* 22 C.M.R. 443, 1956 WL 4803 (A.B.R.1956). *Callahan* was cited with approval in *United States v. Cummings,* 38 C.M.R. 174, 1968 WL 5361 (C.M.A.1968).

sentence of no punishment. If a rehearing is ordered, while paragraph 18c of the pretrial agreement may be enforced, paragraph 18f may not be enforced.

Judge HARRIS concurs.

VILLEMEZ, Judge (concurring in part and dissenting in part).

While I concur in affirming the findings, I respectfully dissent from setting aside of the sentence.

The military justice system, as it is currently designed and has developed—with its post-World War II philosophy, revisions, and implementation of the Uniform Code of Military Justice—is quite paternalistic in some regards, with its numerous built-in safeguards to protect the individual servicemember in his or her quest to navigate, in his or her best interests, the treacherous waters of military discipline. While there is, of course, absolutely nothing wrong with this approach, I think sometimes we may let it color too much our reading and interpretation of those safeguards. Thus, this dissent is respectfully submitted from a little different perspective than that followed by the majority in this case.

The majority opinion is based primarily on two things: (a) the statements of the appellant and his trial defense counsel that, *but for* the questioned prohibiting-provision of the pretrial agreement, the defense would have presented "either affidavits or the telephonic testimony" of the appellant's father and of his "longtime" friend (Record at 271; and (b) a very literal reading of RULE FOR COURTS-MARTIAL 705(c)(1)(B), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2002 ed.), which states in part: "A term or condition in a pretrial agreement shall not be enforced if it deprives the accused of: ... the right to *complete* sentencing proceedings...." (Emphasis added.) To me, the decision of this Court revolves around the interpretation and application given to the word "complete," in the context of the case-specific facts and circumstances, as they relate to the "sentencing proceedings" of this case.

Before beginning that discussion, however, I believe the threshold issue is the content

and quality of any "waiver" the appellant may have made in this case. As our senior court stated in *United States v. Edwards,* 58 M.J. 49, 52 (C.A.A.F.2003):

> To the extent that a term in a pretrial agreement violates public policy, it will be stricken from the pretrial agreement and not enforced. *See* R.C.M. 705(c)(1)(B); *United States v. Clark,* 53 M.J. 280, 283 (C.A.A.F.2000). Under those circumstances, public policy prohibits the accused from waiving the underlying right or privilege as part of the pretrial agreement. Consequently, when pretrial agreements are challenged based upon alleged violations of public policy, the cases invariably discuss the issue in the context of waiver.

Please bear with me through the following unusually-lengthy excerpt from the record of trial, which I believe is necessary to properly evaluate this issue, as the military judge made inquiry of the appellant and his trial defense counsel concerning the questioned provision of the pretrial agreement:

> MJ: Now, let me talk about subparagraph (f), and I talked about this in an 802 telephonically with your counsel because I had concerns about this paragraph. This paragraph states that as consideration for the agreement, the government and you have agreed not to call any off-island witnesses for the sentencing proceeding, either live or telephonically, furthermore, substitutes for off-island witness testimony included—including, excuse me, but not limited to Article 32 testimony, affidavits or letters will not be permitted or considered when formulating an appropriate sentence in this case.

> Now, my initial inclination was to not enforce this particular paragraph because R.C.M. 705 subsection (c)(1)(b) [sic] states that certain provisions of a pretrial agreement will not be enforced and among the provisions it lists are those that deprive the accused of the right to a complete sentencing proceeding. However, let me go in a little bit more depth about this paragraph and how it applies in this proceeding.

> First off, Lieutenant Abramson, as I understand it, this paragraph, while now

two-sided, was *initially a defense-proposed condition.* Is that accurate?

DC: That's correct, sir?

MJ: And as I understand it, it was *aimed to prevent the government from introducing specific items of evidence in the sentencing proceeding.* Is that correct?

DC: *Yes, sir.*

MJ: Now, as it reads at this point, it is now two-way, also preventing you in return from introducing certain items of evidence.

Let me ask for the record in this case, what specifically is it that you would be presenting that you are now prevented from presenting in this case by that paragraph?

DC: Specifically, sir, we would have been presenting either affidavits or the telephonic testimony of one Mr. Sunzeri, Petty Officer Sunzeri's father; and, two, Mr. Abatzoglou, who is Petty Officer Sunzeri's longtime friend.

MJ: Both of those were the subject, were they not, of our witness production motion earlier?

DC: Correct, sir. Yes, sir.

MJ: Very well. Let me ask this, Lieutenant Abramson. *Based on that provision and it being initially a defense originated provision in the compromise you reached and also precluding you from introducing those items, tactically does the defense view that as in their best interest that you want this provision enforced?*

DC: *Yes, sir, we do.*

MJ: *Do you concur with that, Petty Officer Sunzeri?*

ACC: *I do, sir.*

MJ: Very well. Based on the posture of this case and the fact that this was a term initially proposed by the defense and based on what the defense has disclosed on the record that they are precluded from presenting in this case in return for this provision and tactically that they believe that is in their best interest and they want this provision enforced under the facts of this case, while I might normally consider this particular provision to be unenforceable and contrary to the rule and public policy,

at this point *I find that Petty Officer Sunzeri and Lieutenant Abramson certainly have made a knowing and intelligent balance of the cost-benefit analysis here and believe tactically that it is in the defense's best interest to have this provision enforced, and I will, in fact, enforce it.*

Record at 270–72 (emphasis added).

This colloquy clearly establishes: that the military judge was keenly aware of the provisions of R.C.M. 705(c)(1)(B); and that the genesis for the questioned pretrial-agreement provision was the appellant and his trial defense counsel, whom, as the military judge surmised, made—after a "cost-benefit analysis"—a tactical trial decision, which they believed would serve the "defense's best interest[s]." *Id.* at 272. I do not believe the military justice system has become so paternalistic as to take away from an accused and his or her trial defense the ability—and responsibility—to make such trial decisions and, then, to well live (or suffer) with the consequences of those decisions.

That point, however, begs the primary and central question: By including the phrase "the right to complete sentencing proceedings" in its litany of unenforceable provisions, which—per public policy—may not be waived as part of a pretrial agreement, does R.C.M. 705(c)(1)(B) statutorily preclude the appellant and his trial defense counsel from even making such a choice? Under the specific circumstances of this case, I believe not.

Of the parade of protected rights that R.C.M. 705(c)(1)(B) prohibits from being negotiated away in a pretrial agreement by an accused and his or her counsel, "the right to complete sentencing proceedings" is perhaps the least clear and the most difficult to define. We all either know or have a good feel as to what is meant by " . . . the right to counsel; the right to due process; the right to challenge the jurisdiction of the court-martial; the right to a speedy trial; . . . [and] the complete and effective exercise of post-trial and appellate rights." But what does "the right to complete sentencing proceedings" actually mean? Somewhat uniquely among that list, it means, I believe, to a large extent whatever an accused and his

counsel decide that it means in the context of the facts and circumstances in a given case.

I believe that the appellant, in fact, did enjoy his right to "complete sentencing proceedings" in this case, as he and his counsel decided to define it in the appellant's own best interest. As noted above, the appellant told the military judge that, but for the questioned provision in the pretrial agreement, the defense would have presented in its sentencing efforts "either affidavits or the telephonic testimony" of the appellant's father and of his "longtime" friend. Record at 271. Both of whom earlier in the trial had been the subject of a successful defense motion for the production of witnesses.

In making that motion, the trial defense counsel offered a synopsis of the expected testimony of both individuals. Appellate Exhibit I at 3–4. While some of the expected testimony might have been useful in the sentencing phase of the court-martial, a reading of the synopsises clearly indicates that the real worth of both potential witnesses on the merits would have been "to bolster PO Sunzeri's in court testimony and convince the members that he speaks the truth." *Id.* at 3. The synopsis for the appellant's "best friend," was centered around his ability to testify "that he has never seen or heard of CTM2 Sunzeri possessing, using or distributing illegal drugs." *Id.* at 4. Thus, by pleading guilty, the appellant obviated much of the probable usefulness of these two potential witnesses.

While the majority opinion indicates it will not speculate as to whether the testimonies or affidavits of the two potential witnesses would have had an impact on the sentencing authority, I believe that an examination of the appellant's sentencing presentation is appropriate in our consideration of the completeness of his sentencing proceedings.

In extenuation and mitigation, the defense presented three exhibits. Defense Exhibit A consists of three performance evaluations for the periods ending 15 June 2001, 15 June 2000, and 15 June 1999, reflecting individual trait averages of 3.71, 3.71, and 3.29 respectively. Defense Exhibit B is 12 pages of the appellant's Enlisted Qualification History (Page 4's). Defense Exhibit C is the certificate and citation reflecting the appellant's being awarded the Joint Service Achievement Award.

Additionally, the defense presented the in-court testimony of Cryptologic Technician (Maintenance) First Class (CTM1) Geraldine M. Lanham, USN, a 13–year Navy veteran, who had known the appellant for the past 2 years, and who had been his direct supervisor for the previous 13 months. Among other very positive things, she testified that the appellant was an outstanding performer. Technically very sound, he was always the first to volunteer when something out of the ordinary had to get done. He came in early, stayed late, would willingly work weekends to get the job done properly, and never presented any disciplinary problems, other than occasionally being a little late to work, for which he was very apologetic. While she had no real off-duty social contact with the appellant, CTM1 Lanham indicated that at work the appellant was quiet, kept to himself, and did not appear to be socially active with those with whom he worked, which seemed to cause him to be picked on by others for some of his interests, such as reading comic books. CTM1 Lanham stated that from her close observation of the appellant, she believed that he absolutely had rehabilitative potential. Record at 333–43.

Finally, the appellant made a comprehensive unsworn statement that covers 14 pages in the record of trial, in which he covered not only his "life and times," but in which he also provided extensive personal information about the offenses of which he had been convicted. Record at 345–59.

It can be argued that the various items of extenuation and mitigation submitted by the defense more than covered what the appellant's father and his "longtime" friend, whose personal contact with the appellant had "fallen off" since the appellant had entered the Navy, might have been able to offer in his behalf. Appellate Exhibits IX and X. Of particular interest, as mentioned above, is the fact that both of these potential witnesses were the subject of a successful defense motion for witness production, as early in the trial proceedings the military judge ordered

the Government to produce both of them. Record at 240.

Thus, with their presence assured, why would the defense offer to deal away their potential testimony, if it was truly deemed to be of such critical importance to the appellant's best interest? The stated—and only logical—reason being that the defense wanted "to prevent the government from introducing specific items of evidence in the sentencing proceeding." Record at 271. As the military judge concluded after his inquiry into the issue, as provided above, that the defense "made a knowing and intelligent balance of the cost-benefit analysis" and then made a tactical decision "in the defense's best interest." Record at 272. Thus, I believe the appellant, in fact, did enjoy his R.C.M. 705(c)(1)(B)-mandated "right to [a] complete sentencing proceeding[].... " It was a "complete" sentencing proceeding, as he and his trial defense counsel defined and shaped it to serve the appellant's best interests.

Military justice is truly served with well-litigated cases, which ensure that the system, in fact, works in the best interests of *all* parties concerned. This was a well-litigated court-martial. As in any hotly-contested case, all parties made tactical decisions reasonably calculated to serve their own best interests. For the process to maintain its complete integrity, parties must be accountable for and live with such tactical trial decisions. To take the approach the majority provides is to, unnecessarily I believe, give the appellant a windfallesque bonus E-ticket ride on the court-martial carousel, as by the provisions of R.C.M. 810(d)(1) and (2), in any rehearing the appellant is protected against the convening authority approving a more severe sentence than was originally approved.[3]

The Government tried this case once already. Now the majority opinion sets aside the sentence and requires the convening authority to decide between ordering a rehearing on sentencing or approving a sentence of no punishment. As Justice Benjamin Cardoza offered in *Snyder v. Massachusetts*: "[J]ustice, though due to the accused, is due to the accuser also. The concept of fairness must not be strained till it is narrowed to a filament. We are to keep the balance true." 291 U.S. 97, 122, 54 S.Ct. 330, 78 L.Ed. 674 (1934). For the reasons discussed above, I believe this court's decision in this case places an improper and unnecessary weight on the Government's side of the scales of justice.

---

**3.** Ironically, under different facts—such as when the originally-awarded sentence was greater than the original pretrial agreement, and the pretrial agreement for some reason is inapplicable at a rehearing—in saving an appellant from him or herself, such as is being done in the majority opinion in this case, an appellant might actually be potentially subjected to a more severe sentence than was originally approved. *See* R.C.M. 810(d)(2).