# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MULLIGAN, FEBBO, AND WOLFE
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private E1 JOSHUA A. MARKS**
**United States Army, Appellant**

ARMY 20150428

Headquarters, U.S. Army Combined Arms Center & Fort Leavenworth
Charles L. Pritchard, Jr., Military Judge
Lieutenant Colonel Leslie A. Rowley, Acting Staff Judge Advocate

For Appellant: Lieutenant Colonel Melissa R. Covolesky, JA; Captain Heather L. Tregle, JA (on brief); Colonel Mary J. Bradley, JA; Major Christopher D. Coleman, JA; Captain Matthew L. Jalandoni, JA (on brief on specified issue)

For Appellee: Colonel Mark H. Sydenham, JA; Lieutenant Colonel A.G. Courie III, JA; Major Michael E. Korte, JA (on brief).

28 November 2016

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

WOLFE, Judge:

In this appeal we address the appropriateness of appellant's sentence of five years confinement for drawing thirteen obscene cartoons. More specifically, this case raises the unique circumstance where the parties agreed that in determining an appropriate sentence, (and reviewing that sentence on appeal), the court was allowed to consider the mandatory minimum sentence that would have applied had the case been tried in a federal district court.

Before a military judge sitting as a general court-martial, appellant pleaded guilty to one specification of producing obscene material (for drawing the thirteen obscene cartoons) and one specification of possession of obscene material (for possessing those same thirteen cartoons). Both specifications alleged violations of 18 U.S.C. § 1466A, charged under clause 3 of Article 134, Uniform Code of Military

Justice, 10 U.S.C. § 934 [hereinafter UCMJ]. In addition to the five years of confinement, the military judge also sentenced appellant to be dishonorably discharged. The convening authority approved the adjudged sentence, but, consistent with a pretrial agreement, suspended the final year of the sentence for a period of thirty-two months.

Critical to understanding this case, is the fact that this was not appellant's first court-martial. In September 2013, appellant was sentenced to dishonorable discharge and nine years of confinement after pleading guilty to several specifications of possessing child pornography. Pursuant to a pretrial agreement in that case, the convening authority reduced appellant's sentence to confinement to two years. The obscene material that is the subject of this appeal was discovered in appellant's cell in the Joint Regional Confinement Facility at Fort Leavenworth, Kansas, during a routine cell inspection.

We specified the issue of whether this Court may consider the parties' stipulation.[1]

## BACKGROUND

### A. *The Drawings*

On thirteen pieces of paper appellant drew cartoons of young girls performing sexual acts with adult men. The girls are all drawn in an "ánime" or "manga" style associated with Japanese cartoons. While the girls are drawn clearly, the male images are somewhat formless, often without faces or facial features, and except for the male genitalia, drawn without detail. The girls are clearly drawn with childlike expressions and bodies, are wearing children's clothes, and stand at approximately half the height or less of the male images. In each of the images, the girl is depicted performing one or more sex acts on the male penises. In most cases, appellant drew the man's penis in an enlarged manner, often larger than the girl's arms or thighs. A few of the drawings have captions or speech bubbles, including: "they start out so

---

[1] Appellant's sole assigned error was that the cartoons are not obscene. Whether something is "obscene" is a question of fact. When appellant described the drawings and agreed that the cartoons were obscene because they were "patently offensive," and admitted they had no "artistic" or "scientific" value," he adequately established the factual predicate for his plea. Thus, we find no basis in law or fact to question the providence of appellant's plea. "[W]e adhere to the well-established legal principle that a guilty plea generally precludes the post-trial litigation of factual questions pertaining to one's guilt." *United States v. Lloyd*, 46 M.J. 19, 24 (C.A.A.F. 1997). Nonetheless, even looking at this issue with fresh eyes as appellant requests, we would independently find the drawings to be obscene. *See Miller v. California*, 413 U.S. 15, 24 (1973).

young;" "sex for candy;" and "kids these days." In one image, a girl is leaning out of a shower while being penetrated from behind by a male figure. A voice outside the picture asks "Honey, have you seen your dad[?]," to which the girl responds, "No mom havint [sic] seen him."

*B. The Stipulation*

As part of appellant's agreement to plead guilty, appellant agreed to "enter into a written Stipulation of Fact . . . ." He further agreed that "[t]his stipulation may be used pursuant to this agreement to determine the providence of my plea *and to inform the Military Judge of matters pertinent to an appropriate sentence*." (emphasis added).

As is typical, the stipulation included an agreement on how the stipulation could be used. The parties agreed that:

> These facts and enclosures are admissible and may be considered by the sentencing authority and on appeal in determining an appropriate sentence, even if the evidence of such facts is deemed otherwise inadmissible. . . .The Accused waives any objection he may have to the admission of these facts and any referenced prosecution exhibits into evidence under any Military Rule of Evidence and under R.C.M. 1001(b).

The parties later went further and agreed that the stipulation may be used "for any lawful purpose."

As part of the stipulation the parties agreed to take judicial notice of the penalties attributable under federal law. Specifically, the parties stipulated that in the case of someone who had previously been convicted of possession of child pornography, that there was a 10 year mandatory minimum sentence for a subsequent offense of possessing obscene material.[2]

---

[2] As appellant pointed out in his brief on the specified issue, there are several problems with the stipulation as written. First, it asserts that judicial notice will be taken under "R.C.M. 201(b)." It is Military Rule of Evidence [hereinafter Mil. R. Evid.] 201 and 201A that govern judicial notice. Second, judicial notice of a federal statute is not a "fact" but is rather an agreement on the law. That is, the parties were stipulating to laws not facts. Third, the stipulation referenced the wrong title of the United States Code. So, the parties referenced the mandatory minimum sentence for

**LAW AND DISCUSSION**

*A. Mandatory Minimum Sentences*

Although not in serious dispute, as an initial matter, we find that there is no mandatory minimum sentence in this case.

Congress has placed few limits on the punishments that courts-martials may adjudge. In general, the maximum *statutory* punishment for each offense is "as a court-martial may direct." *See* Articles 78; 80-105; 106a-134, UCMJ; *but see* Article 106, UCMJ ("shall be punished by death"). Congress has placed four limitations on this broad authority. First, Congress specifically limited a sentence of death to certain offenses. *See* Articles 85, 90, 94, 99-103, 104-106a, 110, 113, and 118, UCMJ. Second, Congress prohibited punishment by flogging, branding, marking, tattooing, and other "cruel and unusual punishment." UCMJ art. 55. Third, the Congress has limited the punishment that may be adjudged at summary and special courts-martial. UCMJ arts. 19, 20. Fourth, and most important, Congress delegated to the President the authority to set "limits" on punishments that a court-martial may adjudge. UCMJ art. 56.

The President has exercised his Article 56, UCMJ, authority in two distinct manners.

First, the President has limited the *type* of punishment that may be adjudged. Rule for Court-Martial [hereinafter R.C.M.] 1003(b) ("Authorized punishments"). Thus, a court-martial may not adjudge "probation" or require that an accused attend drug treatment or parenting classes. The court-martial is limited to the specific types of punishments (punitive discharge, confinement, fines, forfeitures, reductions, etc.) allowed by the President.

Second, the President has limited the *amount* of punishment that may be adjudged. R.C.M 1003(c). The President has prescribed limits on the punishment that may be imposed based on the type of offense, the rank of the accused, and on the accused's reserve status or as a status as a person "accompanying an armed force in the field." R.C.M 1003(c)(1-4).

---

(continued . . .)

(. . . continued)
possession of obscene matter under "10 U.S.C. 1466A(a)" (which does not exist), instead of 18 U.S.C. 1466A (which is the offense to which appellant pleaded guilty). Nonetheless, we find that within the context of the entire agreement, the parties intended to agree that the court-martial could consider the mandatory minimum sentence that appellant would have faced had the case been tried in a U.S. District Court. Accordingly, we address whether we may consider such an agreement.

For the offenses presented in this case, the President has prescribed that the offense is "punishable as authorized by the United States Code." R.C.M. 1003(c)(1)(B)(ii) ("When the United States Code provides for confinement for a specified period . . . the maximum punishment by court-martial shall include confinement for that period.").

However, neither the Congress's delegation of authority under Article 56, UCMJ, nor the President's exercise of that authority, incorporates mandatory minimum punishments from the United States Code into court-martial sentences. Accordingly, there is no mandatory minimum sentence in this case.

*B. Limits on Pretrial Agreements*

R.C.M. 1001 severely restricts the type of evidence that may be admitted during pre-sentencing proceedings. Relevant evidence under Mil. R. Evid. 402 is excluded unless it is of the type specified in R.C.M. 1001(b) and (c). Government sentencing evidence is limited to evidence of aggravating circumstances directly relating to the offenses, the service record of the accused, opinions on the accused's rehabilitative potential, and any evidence of prior convictions. R.C.M. 1001(b). Unless somehow rebutting evidence offered by the defense, it is unlikely that evidence concerning mandatory minimum sentences that would be imposed by civilian courts fits within one of these permissible categories.

Accordingly, we next consider whether it permissible for a pretrial agreement to put before the sentencing authority the mandatory minimum sentence that might be imposed under the United States Code. That is, is it permissible to bypass the rules governing admissible evidence in sentencing as part of a pretrial agreement?

In general, pretrial agreements may include any term unless it is prohibited. R.C.M 705(d)(1) ("Either the defense or the government may propose *any term or condition* not prohibited by law or public policy.") (emphasis added). The rule is permissive.

Our superior court has stated that "an otherwise valid guilty plea will rarely, *if ever*, be invalidated on the basis of plea-agreement provisions proposed by the defense." *United States v. Gibson*, 29 M.J. 379, 382 (C.M.A. 1990) (citations omitted) (emphasis added). Even when the government proposes a term, "[o]nly actions which may reasonably be construed as attempts to orchestrate the trial proceeding itself" or terms that attempt to turn "the trial proceedings into an empty ritual" will be rejected. *United States v. Jones*, 23 M.J. 305, 307 n.4 (C.M.A. 1987).

Rules governing evidence and criminal procedure are "presumptively waivable." *United States v. Mezzanatto*, 513 U.S. 196, 201-02 (1995).[3] This principle by the Supreme Court was adopted by our superior court in *United States v. Rivera*, 46 M.J. 52, 53-54 (C.A.A.F. 1997). The Court of Appeals for the Armed Forces stated that Article 36, UCMJ, sets out a "congressionally mandated policy" that to the extent practicable court-martial procedures should mirror those of U.S. district courts. *Id.* at 53.

The Court in *Mezzanatto*, however distinguished between agreements that sought to put *more* evidence in front of the fact-finder, and agreements that sought to prevent the fact-finder from hearing certain facts. In *Mezzanatto* the defendant had waived the protections of Fed. R. Evid. 410 and statements made by him as part of pretrial negotiations were introduced against him for impeachment:

> The admission of plea statements for impeachment purposes enhances the truth-seeking function of trials and will result in more accurate verdicts. Cf. . . . Note, [Contracts to Alter the Rules of Evidence], 46 Harv. L. Rev. [138], 142-,43 ("[A] contract to deprive the court of relevant testimony . . . stands on a different ground than one admitting evidence that would otherwise have been barred by an exclusionary rule. One contract is an impediment to ascertaining the facts, the other aids in the final determination of the true situation").

513 U.S. at 204-05 (some internal citations omitted). Such a view also comports with the Rules for Courts-Martial. R.C.M. 705(c)(1)(B) prohibits any term in a plea agreement that deprives the accused of "the right to complete sentencing proceedings."

Cases in which an agreement *expanded* the evidence that could be considered by the court have been found permissible. *United States v. Gallaspie*, 63 M.J. 647, 648 (N-M. Ct. Crim. App. 2006) (reviewing an agreement that waived any objection to hearsay); *see also United States v. Gibson*, 29 M.J. 379 (C.M.A. 1990) (permitting pretrial agreement in which the accused waived his rights to object to hearsay and confrontation clause issues).

---

[3] *But see*, *e.g. United States v. Josefik*, 753 F.2d 585, 588 (7th Cir. 1985) (Agreement to be tried by twelve orangutans would be invalid "because some minimum of civilized procedure is required by community feeling regardless of what the defendant wants or is willing to accept.").

On the other hand courts have looked unfavorably on agreements where the parties agreed to *restrict* the evidence that was put in front of the court. *United States v. Sunzeri*, 59 M.J. 758 (N.M. Ct. Crim. App. 2004) (agreement prohibited remote witnesses from testifying *by any means*); *but see United States v. Edwards*, 58 M.J. 49 (C.A.A.F. 2003) (finding no error in agreement that limited the accused's unsworn statement because the limitation did not restrict mitigation evidence).

As the agreement in this case sought to *expand* the information available to the fact-finder it did not deprive appellant of "complete sentencing proceedings" under R.C.M. 705(c)(1)(B). As such, we find the term to be permissible.

### C. Evidentiary Weight

Accordingly, the question before us is what weight, *if any*, a court-martial (or, on appeal, a Court of Criminal Appeals) may give to the fact that a mandatory minimum sentence would apply in a different forum. Put more broadly, may a military sentencing authority or reviewing authority consider factors that guide the sentence in civilian forums when determining or reviewing a court-martial sentence?[4] We answer the narrow question before us in the affirmative: Where the court-martial was composed of a military judge alone, where the parties have specifically agreed to put the issue in front of the court, and where the parties have jointly waived the applicability of the rules of evidence and rules of courts-martial, the court may give it the weight that it is due.

In *United States v. Hutchison,* our superior court found that a court of criminal appeals is "statutorily required to review the entire record to determine whether the sentence, as approved by the convening authority, should be approved on appeal. 57 M.J. 231, 234 (C.A.A.F. 2002). In that case, the record included parallel civilian proceedings. *Id.* The CAAF held that the court could consider this information in determining sentence appropriateness. The court *also* stated that the court "could bring to bear their wisdom, experience, and expertise" to include "service regulations, customs, and policies." *Id.* That is, the court could consider civilian proceedings (if introduced into the record) and could consider service regulations, customs, and policies. In other words, *Hutchinson* would appear to condone the very issue we wrestle with here.

---

[4] While information concerning a mandatory minimum would appear to always favor the government, the applicable sentencing guideline in a civilian court or the median sentence adjudged by a civilian court for an offense may weigh in favor of an accused.

Accordingly, we will accord the stipulated mandatory minimum their due weight. Which, as we explain below, is to say, not much. We assign this particular stipulation little weight for several reasons.

First, the ham-fisted manner in which the stipulation was written detracts from the evidentiary weight we are willing to give it. *See* fn. 2, *supra*. That is, while we assess that the intent of the parties in the stipulation was to inject the issue of mandatory minimums into the court-martial, our lack of full confidence in that determination subtracts from the weight that we might otherwise give it. Our confidence is further eroded by the absence of any discussion between the military judge and the parties about how the stipulation was to be used; forcing us to rely entirely on the language of the stipulation itself.

Next, a ten-year mandatory minimum may reflect the Congress's wisdom that repeat offenders need extra deterrence. It may also reflect a belief that a minimum ten-year sentence is necessary for either the protection of society or even perhaps for pure retributive concerns. However, the need for deterrence, retribution, and the protection of society, especially in a case that involves a second offense, is already squarely before us. The fact that the accused, *while serving a sentence for possession of child pornography,* created and possessed obscene images of adults having sex with children is already highly aggravating.

Finally, it could just as easily be inferred that the *absence* of any congressionally mandated minimum sentence in the UCMJ for repeat offenders also reflects the wisdom of Congress.

Thus, while we will consider the stipulation as it concerns civilian mandatory minimums, we do not view this consideration as materially affecting our assessment of the sentence. Finally, given that the military judge's sentence of five years was half the stipulated mandatory minimum, and given that appellant specifically agreed that the convening authority could approve a five year sentence, we similarly find that the military judge gave the stipulation its proper weight.

## CONCLUSION

The findings and sentence are AFFIRMED.

8

Senior Judge MULLIGAN and Judge Febbo concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court