# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39183**

————————————

**UNITED STATES**
*Appellee*

**v.**

**James BERRY**
Senior Airman (E-4), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 12 March 2018

————————————

*Military Judge:* Vance H. Spath.

*Approved sentence:* Bad-conduct discharge, confinement for 195 days, forfeiture of all pay and allowances, and reduction to the grade of E-1. Sentence adjudged 4 October 2016 by GCM convened at MacDill Air Force Base, Florida.

*For Appellant:* Captain Kevin R. Clayton, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Major Mary Ellen Payne, USAF; Major Andre L. Pennington, USAF; Captain Anne M. Delmare, USAF.

Before JOHNSON, MINK, and DENNIS, *Appellate Military Judges*.

Judge DENNIS delivered the opinion of the Court, in which Senior Judge JOHNSON and Judge MINK joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

DENNIS, Judge:

Appellant, in accordance with his pleas and pursuant to a pretrial agreement (PTA), was convicted by a general court-martial composed of a military

judge sitting alone of one specification of wrongful possession of cocaine; one specification of wrongful introduction of cocaine onto a military installation with the intent to distribute; two specifications of wrongful distribution of a controlled substance (cocaine and oxycodone); and three specifications of wrongful use of a controlled substance (cocaine and marijuana) in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a.[1] Appellant's adjudged and approved sentence consisted of a bad-conduct discharge, confinement for 195 days, forfeiture of all pay and allowances, and reduction to the grade of E-1.

Appellant raises three issues on appeal, each aimed at reducing his sentence. In his first assignment of error, Appellant argues that the staff judge advocate recommendation (SJAR) improperly advised the convening authority on the scope of clemency powers under Article 60, UCMJ, 10 U.S.C. § 960. Next, Appellant asserts that his civilian confinement conditions constitute cruel and unusual punishment. In his final assignment of error, Appellant claims that his sentence was inappropriately severe. In addition to the matters raised by Appellant, this court specified the following issue:

> WHETHER THE TERM OF THE PRETRIAL AGREEMENT (PTA) REQUIRING APPELLANT "TO CALL NO MORE THAN ONE WITNESS IN SENTENCING" IS A VIOLATION OF PUBLIC POLICY.

We answer our specified issue in the negative, disagree with the assignments of error raised by Appellant, and affirm.

# I. BACKGROUND

Appellant was a promising young Airman who overcame both childhood and career adversities before securing a position as a Vehicle Operator/Dispatcher in the Air Force. Appellant twice deployed in this position, the second deployment occurring between 1 January and 1 August 2014. Appellant returned feeling "numb and detached from reality." Instead of seeking help from appropriate resources, Appellant unfortunately turned to substance abuse. He became addicted to one substance in particular, cocaine. Appellant eventually started sharing cocaine and oxycodone with other Airmen and bringing it onto base. Appellant's misconduct went undetected by law enforcement until he tested positive on a random urinalysis in October 2015. When interviewed by the Air Force Office of Special Investigations (AFOSI), Appellant admitted to

---

[1] Appellant was also charged with one specification of wrongful possession of marijuana in violation of Article 112a, UCMJ. In accordance with the PTA, the convening authority withdrew and dismissed the specification with prejudice after arraignment.

his drug use and addiction and asked for help. He also consented to a search of his cell phone and apartment, which led investigators to discover his wrongful possession and introduction of cocaine and wrongful distribution of oxycodone.

In Appellant's effort to "repair the damage" caused by his misconduct, he agreed to work with the AFOSI and Tampa Police Department (TPD) as a confidential informant in Tampa, Florida. His work as an informant for the AFOSI led to a successful sting operation and the conviction of another Airman selling oxycodone within his unit. Working with the TPD, Appellant participated in four dangerous controlled buys from two different drug dealers. When one of the drug dealers learned of Appellant's status as an informant, the dealer posted Appellant's picture on Facebook, identified him as a TPD informant, listed places where he spent time, and told everyone to be on the lookout for him. For his safety, Appellant was no longer used as a confidential informant and was relocated to an adjacent county.

As Appellant approached trial, he entered into a PTA with the convening authority. Appellant agreed, *inter alia*, to plead guilty, to waive witness travel for anyone other than the TPD officer with whom he worked, to call no more than one witness in sentencing, and to provide certain evidence to the AFOSI. Appellant entered into the PTA in exchange for the convening authority's agreement to withdraw one of the specifications and approve a sentence to confinement no greater than 12 months. There were no other limitations to the sentence to be approved.

## II. DISCUSSION

### A. PTA Provision

We first address the issue specified by this court, that is, whether the term of the PTA requiring Appellant "to call no more than one witness in sentencing" violates public policy. We conclude that it does not.

The interpretation of a PTA is a question of law, which we review de novo. *United States v. Acevedo*, 50 M.J. 169, 172 (C.A.A.F. 1999) (citations omitted). The terms in a PTA are contrary to public policy if they either "interfere with court-martial fact-finding, sentencing or review functions, or undermine public confidence in the integrity and fairness of the disciplinary process." *United States v. Raynor*, 66 M.J. 693, 697 (A.F. Ct. Crim. App. 2008) (quoting *United States v. Cassity*, 36 M.J. 759, 762 (N.M.C.M.R. 1992)). Applying these principles to Appellant's case, we also consider whether the provision in question violates Rule for Courts-Martial (R.C.M.) 705(c)(1)(B), which prohibits the enforcement of terms or conditions that deprive an accused of "the right to complete sentencing proceedings."

The terms of Appellant's PTA were squarely addressed at trial. As is customary, the military judge conducted an inquiry to determine whether Appellant understood and agreed to each term of the PTA. At the beginning of this inquiry, Appellant's civilian trial defense counsel, Mr. PL, directed the military judge's attention to the provision of the PTA now at issue. It provides that Appellant offers "[t]o call no more than one witness in sentencing, so long as the government does not call more than one witness in sentencing." The provision also noted that Appellant's "sworn/unsworn testimony/statement and sentencing letters do not count as a 'witness' for the purposes of this paragraph." Mr. PL asked the military judge if the Defense "could put some things on the record there that would comfort the court on that [provision]."

> PL: [W]e understand the law, as we know the court does, it says, "Hey, defense you can't agree to limit yourself, if you want to call 10 witnesses, you have that right to call 10 witnesses." I want the record to reflect I understand that. I understand that's the law in our system. We made this voluntarily with full knowledge. It was our offer. It originated with us, not with the government, and we agreed. We felt that we could put forward the exact sentencing case that we want to put forward with the witnesses that we have, which is what we have here, the Tampa Police and with [Appellant]. And we said, "Hey we're going to call one, we'll limit them to one," and they -- the government kindly agreed to that. It focuses the case, we think, to what the court needs to know in order to do what we want to do.

> MJ: Okay. So you are comfortable you're going to be able to put on a full, fair sentencing proceeding even with this term in here?

> PL: That's correct, Your Honor. We're very happy about the case that we're going to bring. This is the exact case we would want to bring and there's nothing more that we would do or choose to do and so I want the record to be very clear. I guess the term would be that this was a strategic decision made by counsel and with [Appellant's] agreement. We spoke to him about it and he consented and we negotiated it with the government and we're comfortable and we're happy with that and that's what we wanted.

> MJ: All right. Airman Berry, you heard that discussion . . . . did you have discussions about this provision with your defense counsel?

> ACC: Yes, sir. They called me in and gave me a couple options and this was one I went with, sir.

> MJ: All right. Are you comfortable you're going to be able to put on a full sentencing proceeding?
>
> ACC: Yes, sir.

PTAs may contain provisions that waive many of the rights of the accused in return for a more favorable disposition. *See United States v. Mezzanatto*, 513 U.S. 196, 207–08 (1995). But there is a significant difference between a provision that merely waives a right and a provision that renders a court-martial "an empty ritual;" the latter is a violation of public policy. *United States v. Holland*, 1 M.J. 58, 59 (C.M.A. 1975) (quoting *United States v Allen*, 25 C.M.R. 8, 11 (C.M.A. 1957)). There is little precedent in our jurisdiction to determine in which category Appellant's witness restriction falls. However, our sister court addressed a similar witness provision in *United States v. Sunzeri*, 59 M.J. 758 (N.M. Ct. Crim. App. 2004).

In *Sunzeri*, the court held that a PTA provision requiring an accused to agree not to call "any off island [outside Oahu] witnesses for presentencing, either live or telephonically" violated public policy. *Id.* at 760, 762. There are both similarities and differences between *Sunzeri* and the case before us. Both Appellant and the appellant in *Sunzeri* initiated the provision at issue. Both provisions also invoked the same limitation for the prosecution and defense. Our sister court did not find these factors dispositive, holding that "[t]o find that the appellant had been afforded a complete sentencing hearing, when he was unable to present any evidence from individuals who did not live on the island of Oahu, would simply ignore the plain meaning of 'complete sentencing hearing[.]'" *Id.* at 761. The court's finding made note of one fact not present in Appellant's case, that is, the appellant in *Sunzeri* identified two witnesses whom he intended to call but for the PTA provision. Here, Mr. PL indicated that the term was initiated by the Defense after the Defense concluded it would call only one witness. Appellant, through counsel, made clear there was nothing more the Defense "would do or choose to do."[2] Mr. PL agreed with the military judge that the term was one the Defense could offer based on the "landscape of [its] case."

---

[2] We note that the possibility of calling additional witnesses arose during Appellant's presentencing case when trial defense counsel objected to several last-minute prosecution exhibits. Specifically, trial defense counsel argued that the last-minute nature of the exhibits put the Defense in a "position of disadvantage" from being able to investigate the allegations by calling witnesses or using letters. The military judge did not admit the documents, so the possibility of calling these additional witnesses ultimately had no bearing on Appellant's case.

We also find significant the language in the provision clarifying that sentencing letters do not count as witnesses, another key distinction between Appellant's PTA and the PTA in *Sunzeri*. The *Sunzeri* provision expressly prohibited "substitutes for off island testimony" whereas the language in Appellant's PTA expressly permitted Appellant to present other testimony to the sentencing authority, albeit in written form. *Id.* at 760. Indeed, Appellant took advantage of this opportunity when he offered a compelling letter from a noncommissioned officer outlining Appellant's "dependability and excellent work ethic." We are persuaded by Mr. PL's words to "comfort the court" and hold that, on the facts of this case, the PTA provision in question does not violate public policy or deny Appellant his right to a complete sentencing proceeding. As such, we find no reason to invalidate Appellant's otherwise valid guilty plea. *See United States v. Gibson*, 29 M.J. 379, 382 (C.M.A. 1990).

## B. Advice to Convening Authority

We next turn to Appellant's allegation that the SJAR and its addendum failed to provide accurate advice to the convening authority regarding Article 60, UCMJ.

"The proper completion of post-trial processing is a question of law which this court reviews de novo." *United States v. LeBlanc*, 74 M.J. 650, 660 (A.F. Ct. Crim. App. 2015) (citing *United States v. Sheffield*, 60 M.J. 591, 593 (A.F. Ct. Crim. App. 2004)). We begin by determining whether there was, in fact, error. On the facts discussed below, we find none.

Article 60, UCMJ, governs the convening authority's ability to grant clemency. Article 60(c)(4)(B), the provision of the statute on which Appellant relies, states,

> Upon the recommendation of the trial counsel, in recognition of the substantial assistance by the accused in the investigation or prosecution of another person who has committed an offense, the convening authority . . . shall have the authority to disapprove, commute, or suspend the adjudged sentence in whole or in part,
>
> . . . .

10 U.S.C. § 860(c)(4)(B).[3]

---

[3] Article 60(c)(4)(C), UCMJ, 10 U.S.C. § 860(c)(4)(C), provides the convening authority the power to grant clemency pursuant to a PTA under certain circumstances. This provision is inapplicable to Appellant's case since his adjudged sentence did not exceed the maximum punishment set forth in his PTA.

After being served a copy of the SJAR, Appellant submitted matters for the convening authority to consider pursuant to Article 60, UCMJ. Appellant personally requested that his sentence to confinement be reduced from 195 days to 120 days. Through Mr. PL and his military trial defense counsel, Captain (Capt) DW, Appellant asked the convening authority to disapprove the adjudged bad-conduct discharge and "instead accept an unconditional waiver from [Appellant] for an Under Other Than Honorable Conditions discharge." Capt DW acknowledged the restrictions set forth in Article 60, UCMJ, but informed the convening authority he could disapprove part of the sentence "if Trial Counsel recommends doing so . . . ." Capt DW then requested that trial counsel support the defense request to disapprove the bad-conduct discharge "due to [Appellant's] work as a confidential informant."

Upon receipt of Appellant's clemency submission, the Government asked the Defense to clarify its position on whether the convening authority had the power to grant the requested clemency. Capt DW and Mr. PL submitted a Supplemental Clemency Memorandum in response to the request. The memorandum largely reiterated the Defense's position that the convening authority had the power to disapprove Appellant's bad-conduct discharge if the convening authority believed Appellant "provided substantial assistance and the Trial Counsel recommends doing so."

On 14 November 2016, the Staff Judge Advocate (SJA) completed an addendum to the SJAR, which informed the convening authority that "[u]nder Article 60, UCMJ, you are not authorized to grant the requested clemency under the circumstances of this case." The SJA further noted, "[i]f you had said authority, I would not recommend you use it in this case." On 17 November 2016, the convening authority took action approving the sentence as adjudged.

Appellant now appears to go one step further. He argues that the convening authority's power to grant the requested clemency was not dependent on trial counsel's recommendation. Rather, Appellant argues, "Article 60(c)(4)(B) should be read that when an accused's substantial assistance is recognized by trial counsel, clemency can be granted." Such an interpretation is inconsistent with the plain language of Article 60, UCMJ, and contrary to how similar statutes have been interpreted. In *Melendez v. United States*, 518 U.S. 120 (1996), the United States Supreme Court interpreted a federal statute, 18 U.S.C. § 3353(e), which authorizes a judge to depart from a *statutory minimum* "[u]pon motion of the government . . . so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense." *Melendez*, 518 U.S. at 124 (quoting 18 U.S.C. § 3353(e)). Although the prosecutor moved the district court to depart from the sentencing guidelines, the Court found that, because the prosecutor failed to move specifically

for the district court to depart below the statutory minimum, the judge had no authority to do so. *Id*. at 125–26, 131.

Here, Appellant's claim is even more attenuated than the argument in *Melendez*. Although Appellant repeatedly, and creatively, points to the record for proof that Appellant's substantial assistance was *recognized* at several points during the processing of his case, the record is devoid of any evidence that trial counsel *recommended* the convening authority grant clemency. Appellant asserts that a plain language reading of Article 60(c)(4)(B), UCMJ, would defeat its purpose and "prosecutors could hold all the leverage" by refusing "to give a recommendation even when an accused's contributions have been repeatedly recognized." Whether or not that is true, we are not authorized to rewrite a statute because we "deem its effects susceptible of improvement." *Badaracco v. Commissioner*, 464 U.S. 386, 397–98 (1984) (citations omitted). Congress created an unambiguous limitation on the convening authority's power to grant the requested clemency: that the power exists only "[u]pon the recommendation of the trial counsel." 10 U.S.C. § 860(c)(4)(B). With no such recommendation in Appellant's case, the SJA properly advised the convening authority that he did not have the power to grant the requested clemency.

## C. Confinement Conditions

We now address whether the conditions of Appellant's post-trial confinement constitute cruel and unusual punishment. We find they do not.

Both the Eighth Amendment to the United States Constitution[4] and Article 55, UCMJ, 10 U.S.C. § 855, prohibit cruel and unusual punishment. In general, we apply the Supreme Court's interpretation of the Eighth Amendment to claims raised under Article 55, UCMJ, except where legislative intent to provide greater protections under Article 55, UCMJ, is apparent. *United States v. Avila*, 53 M.J. 99, 101 (C.A.A.F. 2000) (citing *United States v. Wappler*, 9 C.M.R. 23, 26 (C.M.A. 1953)).

"[T]he Eighth Amendment prohibits two types of punishments: (1) those 'incompatible with the evolving standards of decency that mark the progress of a maturing society' or (2) those 'which involve the unnecessary and wanton infliction of pain.'" *United States v. Lovett*, 63 M.J. 211, 215 (C.A.A.F. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 102–03 (1976)). We adopt the three-part test prescribed in *Lovett* to determine whether the conditions of Appellant's confinement violated the Eighth Amendment and thus, Article 55, UCMJ. Appellant must show: (1) an objectively, sufficiently serious act or omission resulting in the denial of necessities; (2) a culpable state of mind on the part of prison officials amounting to deliberate indifference to Appellant's

---

[4] U.S. CONST. amend. VIII.

health and safety; and (3) that Appellant has exhausted the prisoner-grievance system and that he has petitioned for relief under Article 138, UCMJ. *Lovett*, 63 M.J. at 215.

Assuming without deciding that Appellant satisfied the first and third[5] prongs outlined in *Lovett*, we find no evidence that prison officials acted with indifference to Appellant's health and safety. Appellant began his sentence to confinement immediately following trial. Pursuant to a preexisting agreement for military members assigned to MacDill Air Force Base, Appellant was confined at Hillsborough County (Florida) Jail. The agreement required military members to be housed separately from the general population, so county jail officials placed Appellant in solitary confinement while he was awaiting his transition to a military confinement facility. It is unclear whether this had any bearing on Appellant's placement. Appellant alleges that his stay in solitary confinement constituted cruel and unusual punishment. More specifically, Appellant claims that he was denied a pillow and blanket for 15 days, which deprived him of the ability to sleep and exercise.

In his clemency request to the convening authority, Appellant indicated that the failure to provide him with a pillow and blanket was "due to shortage." While certainly unfortunate, the shortage of these items does not amount to the "deliberate indifference" required to find a violation of the Eighth Amendment or Article 55, UCMJ. Without more, Appellant fails to meet his burden to establish "a culpable state of mind on the part of prison officials amounting to deliberate indifference to Appellant's health and safety." *Lovett*, 63 M.J. at 215.

Citing *United States v. Gay*, 74 M.J. 736, 742 (A.F. Ct. Crim. App. 2015) *aff'd*, 75 M.J. 264 (C.A.A.F. 2016), Appellant also asks that we set aside Appellant's bad-conduct discharge notwithstanding a decision that there was no violation of the Eighth Amendment or Article 55, UCMJ. But "[o]nly in very rare circumstances do we anticipate granting sentence relief based upon conditions of post-trial confinement when there is no violation of the Eighth Amendment or Article 55, UCMJ." *United States v. Ferrando*, 77 M.J. 506, 517 (A.F. Ct. Crim. App. 2017) (citations omitted); *cf. United States v. Nerad*, 69 M.J. 138, 145–47 (C.A.A.F. 2010) (holding that despite our significant discretion in reviewing the appropriateness of a sentence, this court may not engage in acts of clemency). We do not find such circumstances present in this case.

---

[5] Capt DW's 14 November 2016 Supplemental Clemency Memorandum noted that, "contemporaneous with this letter," Appellant submitted an Article 138, UCMJ, request to grant "relief for his confinement conditions while at Hillsborough County Jail." The complaint does not appear in the record nor does Appellant reference it on appeal.

**D. Sentence Appropriateness**

Finally, Appellant asserts that his sentence of 195 days confinement when combined with a bad-conduct discharge is inappropriately severe. We disagree.

We review sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006). We "may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as [we find] correct in law and fact and determine[ ], on the basis of the entire record, should be approved." Article 66(c), UCMJ, 10 U.S.C. § 866(c). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009) (citations omitted). While we have great discretion in determining whether a particular sentence is appropriate, we are not authorized to engage in exercises of clemency. *Nerad*, 69 M.J. at 142–48.

Appellant bases his claim of sentence severity on two factors. First, Appellant asks this court to focus on Appellant's career and accomplishments, all of which were made known to the military judge at Appellant's presentencing hearing. Next, Appellant argues that he was "given no credit for the substantial assistance he provided and was given the same sentence that anyone else who committed the crimes he committed would have been given." Appellant offers no evidence to support this latter assertion. In fact, Appellant's clemency submission pointed to the military judge's recognition that Appellant "produced." Appellant's efforts as a confidential informant are noteworthy. These efforts, along with significant evidence of Appellant's struggles with drug addiction, were considered by the military judge in determining an appropriate sentence. After giving individualized consideration to Appellant, his record of service, the nature and severity of the offense, and all other matters contained in the record of trial, we do not find Appellant's sentence to be inappropriately severe.

## III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c).

Accordingly, the findings and the sentence are **AFFIRMED**.


FOR THE COURT

CAROL K. JOYCE
Clerk of the Court