UNITED STATES

v.

Frank R. CASSITY, 279 82 3204 Air Traffic Controller Airman (E–3), U.S. Navy.

NMCM 91 2533.

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 13 June 1991.

Decided 7 Dec. 1992.

Maj G.S. Warner, USMC, Appellate Defense Counsel.

Lt Col John P. Cotter, USMCR, Appellate Defense Counsel.

Maj Laura L. Scudder, USMC, Appellate Government Counsel.

Before FREYER, Senior Judge and WELCH and MOLLISON, JJ.

MOLLISON, Judge:

The principal issue in this appeal concerns the validity of a provision in the appellant's pretrial agreement whereby the appellant would have an adjudged bad-conduct discharge suspended only if more than four months' confinement was also adjudged.

The appellant was an Air Traffic Controlman striker and a member of the auxiliary security force of Naval Air Station, Key West, Florida. Pursuant to a pretrial agreement, the appellant pled guilty to wrongfully possessing cocaine on 20 February 1991 while on duty as a sentinel and to wrongfully using cocaine from on or about 15 to 20 February 1991, both in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a. The appellant was found guilty consistent with his pleas. A military judge sitting alone as a special court-martial sentenced the appellant to confinement for three months, forfeiture of $400.00 pay per month for three months, reduction to pay grade E–1, and a bad-conduct discharge. The sentencing limitation of the pretrial agreement provided that the bad-conduct discharge would be suspended if more than four months' confinement was also adjudged. Inasmuch as four months' confinement was not adjudged, the convening authority approved the bad-conduct discharge without suspension.

The appellant's case is now before this Court for review in accordance with Article 66, UCMJ, 10 U.S.C. § 866. This Court may affirm only such findings of guilty and the sentence or such part of the sentence as it finds correct in law and fact and determines on the basis of the entire record should be approved. Art. 66(c), UCMJ, 10 U.S.C. § 866(c). The appellant asserts six errors have been committed in his court-martial.[1] He requests the Court to set aside the findings and sentence. We may hold a finding of guilty or a sentence incorrect on the ground of an error of law only if the error materially prejudiced the substantial rights of the appellant. Art. 59(a), UCMJ, 10 U.S.C. § 859(a). We comment on only the principal issue—the validity of the aforementioned provision of appellant's pretrial agreement. We find no merit in the balance of the appellant's assignments of error and will not comment on them further. As to the first assignment of error, we set out in order our understanding of the law, the material facts of this case, our conclusions, and our disposition of the case. In sum, we find merit in the appellant's first assignment of error and grant relief on sentence.

### Rules and Principles of Law

■ Plea bargain agreements are authorized in courts-martial, however, before an accused's guilty plea may be accepted by the military judge, the military judge must inquire whether the plea is the product of such an agreement. Arts. 36, 45(a), UCMJ, 10 U.S.C. §§ 836, 845(a); Rules for Courts–Martial (R.C.M.) 705, 910(d), Manual for Courts–Martial, United States, 1984.

1. I. APPELLANT'S GUILTY PLEAS ARE IMPROVIDENT BECAUSE THEY WERE OFFERED IN EXCHANGE FOR A PRETRIAL AGREEMENT WHICH THE MILITARY JUDGE FOUND FUNDAMENTALLY UNFAIR AND AGAINST PUBLIC POLICY.
II. THE RECORD FAILS TO INDICATE THAT APPELLANT'S CASE WAS SUBJECTED TO AN IMPARTIAL AND UNBIASED STAFF JUDGE ADVOCATE'S RECOMMENDATION.
III. THE CONVENING AUTHORITY'S ACTION AS TO APPROVAL OF FORFEITURES IN APPELLANT'S CASE IS AMBIGUOUS.

IV. THE CONVENING AUTHORITY ERRED BY APPROVING A SENTENCE INCLUDING A BAD CONDUCT DISCHARGE BASED UPON A RECORD OF TRIAL WHICH FAILS TO HAVE ATTACHED APPELLANT'S CLEMENCY REQUEST AND PROOF OF SERVICE OF THE STAFF JUDGE ADVOCATE'S RECOMMENDATION UPON TRIAL COUNSEL.
V. APPELLANT HAS BEEN DENIED EFFECTIVE POST–TRIAL ASSISTANCE OF COUNSEL.
VI. THE APPROVED SENTENCE TO AN UNSUSPENDED BAD CONDUCT ·DISCHARGE IS INAPPROPRIATE UNDER THE CIRCUMSTANCES OF APPELLANT'S CASE.

Therefore, the existence of a pretrial agreement must be disclosed to the military judge, and the military judge must inquire to ensure the accused understands the agreement and the parties agree to its terms. R.C.M. 910(f). The agreement must comply with requirements and restrictions on pretrial agreements set forth in R.C.M. 705. In a bench trial, inquiry into the sentence limitation portion of the agreement is ordinarily deferred until after the announcement of sentence. *Id.* Where the plea bargain encompasses conditions that the trial judge believes violate appellate case law, public policy, or the trial judge's own notions of fundamental fairness, he should, on his own motion, strike such provisions from the agreement with the consent of the parties. *United States v. Green*, 1 M.J. 453 (C.M.A.1976); *United States v. Elmore*, 1 M.J. 262 (C.M.A.1976); *United States v. Hoaglin*, 10 M.J. 769 (N.C.M.R.1981). If the parties do not consent, the military judge must permit the accused to withdraw the guilty plea. *Cf.* R.C.M. 910(h)(3).

The policy behind judicial scrutiny of pretrial agreements was stated in *Green:*

> Judicial scrutiny of plea agreements at the trial level not only will enhance public confidence in the plea bargaining process, but also will provide invaluable assistance to appellate tribunals by exposing any secret understandings between the parties and by clarifying on the record any ambiguities which lurk within the agreements. More importantly, a plea bargain inquiry is essential to satisfy the statutory mandate that a guilty plea not be accepted unless the trial judge first determines that it was voluntarily and providently made. *See* Article 45(a), Uniform Code of Military Justice, 10 U.S.C. § 845(a). Finally we believe trial judges must share the responsibility, which until now has been borne by the appellate tribunals, to police terms of pretrial agreements to insure compliance with statutory and decisional law as well as adherence to basic notions of fundamental fairness.

1 M.J. at 456.

What provisions violate appellate case law is determined by reference to prece-dent. Determining what provisions violate "public policy" is potentially more troublesome. Appellate case law, its sources, and R.C.M. 705 are, themselves, statements of public policy. The United States Court of Military Appeals has observed that a pretrial agreement provision that "substitutes the agreement for the trial, and, indeed, renders the latter an empty ritual" would violate public policy. *United States v. Cummings*, 17 U.S.C.M.A. 376, 38 C.M.R. 174, 178 (1968). Beyond that, however, the Court of Military Appeals "has not articulated any general approach to pretrial agreement conditions that can be used to determine which conditions are permissible and which are to be condemned. An analysis of the cases suggests, however, that the court will disapprove those conditions that it believes are misleading or [abridge] fundamental rights of the accused...." 1 Francis A. Gilligan & Frederick I. Lederer, *Court–Martial Procedure* § 12–25.20 (1991). For example, appellate military courts have disapproved provisions that waive any speedy trial issue (*Cummings* ); that waive challenges to jurisdiction (*United States v. Banner*, 22 C.M.R. 510 (A.B.R. 1956), *cited with approval in Cummings* ); that waive representation by individual military counsel or by civilian counsel (*United States v. Marsters*, 49 C.M.R. 495 (C.G.C.M.R.1974)); that require the entry of pleas prior to motions (*United States v. Holland*, 1 M.J. 58 (C.M.A.1975); *but see United States v. Jones*, 20 M.J. 853 (A.C.M.R.1985), *aff'd*, 23 M.J. 305 (C.M.A. 1987)); that require waiver of unlawful command influence issues (*United States v. Kitts*, 23 M.J. 105, 108 (C.M.A.1986)); that specify how an accused will testify in other trials (*United States v. Gilliam*, 23 U.S.C.M.A. 4, 48 C.M.R. 260 (1974)); that reduce confinement based on the number of times the accused testifies against an accomplice (*United States v. Scoles*, 14 U.S.C.M.A. 14, 33 C.M.R. 226 (1963)); that preclude offering any evidence in extenuation or mitigation during the pre-sentencing procedure (*United States v. Callahan*, 22 C.M.R. 443 (A.B.R.1956), *cited with ap-*

*proval in Cummings* ); or, that waive appellate review (*Cf. Cummings; United States v. Ponds*, 1 U.S.C.M.A. 385, 3 C.M.R. 119 (1952)).[2]

■ Identifying the sponsor of a questioned provision—Government or defense—has been helpful in determining whether the provision's inclusion in a pretrial agreement violates public policy. *See United States v. Gibson*, 29 M.J. 379, 382 (C.M.A. 1990); *United States v. Zelenski*, 24 M.J. 1 (C.M.A.1987); *United States v. Schmeltz*, 1 M.J. 8 (C.M.A.), *rev'd on other grounds*, 1 M.J. 273 (C.M.A.1975). The rules of the marketplace, however, are not permitted to operate unregulated in the military justice system. Despite the mutual assent of the parties, the propriety of a particular pretrial agreement provision and its operation in the case must be assessed in view of the basic tenets of the military justice system. *United States v. Dawson*, 10 M.J. 142, 144–45 (C.M.A.1981). Therefore, pretrial agreements in courts-martial are not always governed by ordinary rules of contract, although "plea bargain law" has drawn heavily on contract law analogies. *United States v. Koopman*, 20 M.J. 106, 110 (C.M.A.1985) (quoting *Cooper v. United States*, 594 F.2d 12, 15–16 (4th Cir.1979)). *See also United States v. Kazena*, 11 M.J. 28, 31 (C.M.A.1981); *Cummings*, 38 C.M.R. at 178.

■ From the foregoing, the following principle emerges: Pretrial agreement provisions are contrary to "public policy" if they interfere with court-martial fact-finding, sentencing, or review functions or undermine public confidence in the integrity and fairness of the disciplinary process. *See United States v. Mitchell*, 15 M.J. 238, 240–241 (C.M.A.1983); *Green*, 1 M.J. at

456; *United States v. Foust*, 25 M.J. 647, 649 (A.C.M.R.1987); *Jones*, 20 M.J. at 855; *Callahan*, 22 C.M.R. at 448.

■ The rule prohibiting the acceptance of pretrial agreements that violate notions of fundamental fairness is another facet of the same principle. The military judge is charged with applying the rule. How the military judge determines whether a pretrial agreement provision violates notions of fundamental fairness is, like sentencing in a bench trial, a matter within his discretion. *Cf.* R.C.M. 1001(g). What violates the military judge's own notion of fundamental fairness might appear to be entirely subjective, however, we find no reason or authority under the UCMJ for committing such determinations to the exclusive, personal, standardless discretion of the military judge. Rather, the discretion the military judge exercises in determining whether a provision violates notions of fundamental fairness is subject to review for abuse of that discretion.

■ Courts-martial sentences must be individualized. They must be appropriate to the offender and the offense. *United States v. Snelling*, 14 M.J. 267 (C.M.A. 1982). Therefore, whether a provision of a pretrial agreement violates notions of fundamental fairness may depend on its application in a given case. The military judge's obligation to ensure the provisions in a pretrial agreement do not violate notions of fundamental fairness complements the objective of ensuring the accused is judged on the basis of considerations particular to the accused and the nature and seriousness of his offense.

Exchanges of pleas of guilty for approval of a stated maximum sentence are generally not violative of public policy.[3]

---

**2.** Now many of these provisions have been prohibited by the President under his rule-making authority. Art. 36(a), UCMJ, 10 U.S.C. § 839(a); R.C.M. 705(c)(1)(B) (prohibiting terms depriving the accused of a right to counsel, the right to due process, the right to challenge the jurisdiction of the court, the right to a speedy trial, the right to a complete sentencing proceeding, the complete and effective exercise of post-trial and appellate rights). Similarly, the President has expressly recognized other terms as permissible. R.C.M. 705(c)(2) (permitting promises to enter

into stipulations of fact, a promise to testify as a witness in another's trial, a promise to provide restitution, conditions of probation, waiver of an Article 32 pretrial investigation, waiver of trial by members, and waiver of the personal appearance of witnesses at sentencing proceedings).

**3.** Agreements in exchange for a plea of guilty may be for other purposes, such as, a promise to refer charges to a certain type of court-martial, to refer a capital offense as non-capital, to

R.C.M. 705(b)(2)(E). *See also Cummings*, 38 C.M.R. at 174. The exception to the rule concerns capital offenses referred to trial as such. Pretrial agreements are not authorized for such offenses because the accused is not permitted to enter a plea of guilty. Art. 45(b), UCMJ; 10 U.S.C. § 845(b); R.C.M. 910(a)(1).

■ Notably, the Army Court of Military Review has examined a provision which reduces confinement in the event a bad-conduct discharge *is* awarded and concluded it did not violate public policy:

> Besides involving the sentence only, it does not purport to coerce an accused in the exercise of any rights, fundamental or otherwise.... Ultimately, it facilitates implementation of an appropriate, individualized sentence and an effective command disciplinary program. At the same time, it protects an accused from a more severe sentence to confinement and financial deprivation if a discharge is adjudged. The results are not inconsistent with public policy.

*United States v. Holmes*, 17 M.J. 830, 831 (A.C.M.R.), *petition denied*, 18 M.J. 438 (C.M.A.1984). In another case, the Army Court observed that an accused could not complain about an identical provision because the accused got what he bargained for and was deprived of no fundamental right. The Army Court further observed that it was immaterial that such a provision thwarted the accused's tactic of arguing for lengthy confinement and no discharge, and if the appellant found his agreement too onerous, he could have withdrawn from it. *United States v. Castleberry*, 18 M.J. 826 (A.C.M.R.1984). We agree with the Army Court in their treatment of the commonplace provision they approved in *Holmes* and *Castleberry*. We must, however, examine the novel sentencing provision in this case in light of the record and its application in the case before us.

### The Material Facts

As noted earlier, the appellant pled guilty to drug offenses in exchange for a pretrial agreement which would suspend a

withdraw a specification, or to present no evi-

bad-conduct discharge, provided confinement for more than four months was also adjudged. The adjudged confinement was less than four months. The convening authority did not suspend the bad-conduct discharge. Additional material facts of the case are as follows: The military judge conducted the appropriate guilty plea inquiry, including an inquiry into the existence and terms of the pretrial agreement. Trial counsel argued for a bad-conduct discharge, but no more confinement than three months because the appellant was cooperating with the Naval Investigative Service (NIS). Record at 22. Contrarily, trial defense counsel argued: "[W]e request that you do not give him a BCD instead, if, ah, instead, the maximum jail time allowed, and avoid the bad-conduct discharge." *Id.* Since the appellant was tried by a military judge alone, the military judge deferred his examination of the sentence limiting provisions until after sentence was announced. At that time the following colloquy occurred:

> MILITARY JUDGE: There is a provision that provides if a bad-conduct discharge is awarded, it will be suspended for 6 months from the date sentence is announced, provided more than 4 months of confinement is awarded. I don't think that provision is going to pass muster. What's the chilling effect on the defense to try and mitigate confinement. In other words, if you look at analogous cases, *it simply isn't fair*. And I do recall in your argument, asking for maximum confinement and now it is apparent to me that it would have been required, that is confinement in excess of 4 months in order for the suspension terms of the agreement to take place. Is that what the understanding of the parties was?

> TRIAL COUNSEL: According to the Government, the understanding was that if more than 4 months were adjudged with a bad-conduct discharge, he would be limited to the 4 months and the BCD; however, since he was only sentenced to 3 months, the section is inapplicable.

dence as to a specification. R.C.M. 705(b).

MILITARY JUDGE: What was your first condition again? I think you misstated it? Tell me what your interpretation of the agreement would be if the sentence was awarded in excess of 4 months?

TRIAL COUNSEL: He would serve the time and the bad-conduct discharge would be suspended.

MILITARY JUDGE: And that's your understanding [defense counsel]?

DEFENSE COUNSEL: Yes. Basically, more jail time being substituted for a bad-conduct discharge. Higher jail time, he would have avoided a bad-conduct discharge. So, I don't understand, ah, I did not argue just for maximum jail time, sir, I argued for maximum jail time to avoid a bad-conduct discharge.

MILITARY JUDGE: I understand that. Well, *I don't think this provision is fair.* And what may well happen Cassity, by the time your case is reviewed, the suspended terms of the agreement will be honored, despite the fact that you've been awarded confinement less than 4 months. It certainly does not require a mistrial because the mistake can be remedied by the convening authority and other higher reviewing authorities.... *It's an unusual provision.* I've never seen one like it in the last 26 years of reading these things. *Personally, I think that provision is unfair....* And I should hope that some relief would be afforded to you in the reviewing process. I should perhaps check. [Defense counsel], where did this particular provision originate?

DEFENSE COUNSEL: With my client, sir.

. . . .

MILITARY JUDGE: *Except for that portion concerning the suspension of the bad-conduct discharge being conditioned on confinement in excess of 4 months, I consider the remaining provisions to be in accord with appellate case law, not against public policy and not contrary to my own notions of fundamental fairness.*

Record at 24–26 (emphasis added).

In light of these facts we must resolve whether the military judge abused his discretion in finding the condition on suspension violated public policy and was fundamentally unfair. If he did not abuse his discretion, we must determine whether he erred in leaving the matter to be resolved by the convening and other reviewing authorities. Finally, if the military judge erred in leaving the matter to be resolved by others, we must then determine how to remedy that error.

*Conclusions and Disposition*

■ Counsel may argue for an appropriate sentence. R.C.M. 1001(g). The purpose of argument on sentence is unquestionably to guide the trial court in carrying out its sentencing function in an informed fashion. To this same end, counsel have obligations of candor towards the courts-martial before which they appear. Rule 3.3, Rules of Professional Conduct, Judge Advocate General Instruction 5803.1 series. The Government's argument that the appellant ought to be sentenced to less because of his cooperation with NIS was particularly misleading because trial counsel knew full well that if the military judge was thereby persuaded to reduce confinement on the basis of this mitigation, the appellant would receive a more severe sentence. Clearly, the provision in this pre-trial agreement, when taken together with the misleading arguments of counsel, interfered with the military judge's responsibility to determine in a meaningful way an appropriate sentence in this case. Similarly, we doubt anyone can have any confidence in the integrity of a deliberative process which countenances agreements encouraging parties to set before the decision-maker positions antithetical to their client's interests in order to obtain a favorable result. The agreement here, when taken together with the parties' arguments, reduced the sentencing process to a paradox.[4] Moreover, we cannot perceive

---

4. This circumstance is a product of the ignorance of the military judge as to the terms of the

sentence limitation before announcement of sentence, linkage between the various forms of

the merit in the parties' sentencing objectives—a punitive discharge if less confinement is awarded OR no punitive discharge if the appellant spends more time in confinement. The concurrence of the Government, convening authority, and appellant in this distortion of the sentencing process does not make it more palatable. The military judge's misgivings, based on intuition and years of judicial experience, were legitimate. In short, the trial judge did *not* abuse his discretion when he found the condition on suspension was fundamentally unfair and violated public policy.

In so concluding, we do not mean to imply that defense counsel is somehow precluded from arguing for a sentence less than that provided for in the agreement. In fact, the defense may argue for one form of punishment, rather than another, knowing that his client is protected by the pretrial agreement as to the former. *United States v. Wood*, 23 U.S.C.M.A. 57, 48 C.M.R. 528 (1974).[5] Similarly, the Government is not precluded from arguing for a sentence greater than that provided in the agreement. *Id.* We do hold, however, that the military judge's findings that an agreement violates public policy and notions of fundamental fairness will be given effect under circumstances such as these, that is, when a pretrial agreement having dubious sentencing objectives combines with the arguments of trial counsel to distort the court's sentencing function.

Having concluded the military judge did not abuse his discretion in making these findings in this case, we conclude he did err in leaving the matter to the convening authority and others to remedy. Having found that this provision was contrary to public policy and was fundamentally unfair, the military judge was obliged to strike the provision with the consent of the parties, and if they did not consent, he was required to permit the appellant to withdraw his plea. The military judge could also have reconsidered his sentence.

R.C.M. 1009. He took none of these actions. We could correct the error by giving the parties the same opportunities the trial judge should have, that is, we could afford the parties an opportunity to file with the Court a pleading stating whether or not they concur in striking the offending condition on suspension of the bad-conduct discharge. If the parties concurred, the Court could strike the provision from the agreement and take appropriate action on the sentence. If the parties did not concur in striking the offending provision, the appellant could be afforded an opportunity to file with the Court a motion to set aside the findings and sentence and order a rehearing. Alternatively, we could take action on the sentence under Article 66 and disapprove the bad-conduct discharge. I would take the former course of action, however, Judges Freyer and Welch prefer the latter. Accordingly, the findings of guilty and only so much of the sentence as provides for confinement for three months, forfeiture of $367.00 pay per month for three months, and reduction to pay grade E–1 are affirmed.[6]

The foregoing is intended to be a statement of principle to guide military judges in their determinations as to what pretrial agreement provisions violate public policy or notions of fundamental fairness and what actions to take when they are presented with ones which do. It may also cause parties to give some thought as to the impact of their dealings on the functions and integrity of the disciplinary process, itself. It does not stand as an open-ended invitation to post-trial quibbling over bargained-for sentence limitations.

FREYER, Senior Judge (concurring):

I agree with Judge Mollison's conclusion that, under the circumstances of this case, the pretrial agreement, the trial counsel's argument, and the sentence converged to produce a result which was against public policy, and that the military judge was

---

punishment, and the argument of counsel in this case.

**5.** *Wood* was decided before parties began linking the various forms of punishment.

**6.** In taking this action, we are also correcting an unrelated technical matter concerning forfeitures of pay.

obliged to do more than merely to record his opinion to that effect. Both the trial counsel and the convening authority represent the interests of the United States, and I can only infer that the convening authority's intent in entering into this pretrial agreement was to give the appellant an opportunity for probationary restoration while, at the same time, ensuring that he served a sufficient period of confinement and, to that end, that the defense would be deterred from mounting a presentation favoring a punitive discharge in return for minimal confinement. The deterrence of the defense was achieved, but the convening authority's other two putative sentencing objectives were deliberately frustrated by the trial counsel. I also agree with what I take to be Judge Mollison's conclusion that a pretrial agreement provision which sets the trial counsel and the convening authority at cross-purposes, to the detriment of the accused and the judicial process, is conceptually distinguishable from the situation presented by *United States v. Wood*, 23 U.S.C.M.A. 57, 48 C.M.R. 528 (1974), and that it is fundamentally unfair and contrary to public policy.

■ However appropriate the remedy proposed by Judge Mollison would have been at an earlier stage of the proceedings, at this point in time I agree with the remedy suggested by Judge Welch, which I take to be that we should set aside the bad-conduct discharge pursuant our Article 66 authority to affirm only that sentence which we determine "should be approved." Accordingly, I vote to affirm the findings of guilty and only so much of the sentence as provides for reduction to pay grade E-1, forfeiture of $367.00 pay per month for three months, and confinement for three months.

WELCH, Judge (concurring in the result):

I concur with the result reached by the majority. However, in my opinion, the provision in the pretrial agreement (PTA) under evaluation is not contrary to public policy or fundamentally unfair. Thus, I conclude that the trial judge erred when he so characterized the provision. My reasoning:

1. Obviously, the appellant and defense counsel had one primary mission at trial: to better the appellant's life by obtaining a sentence that would avoid a bad-conduct discharge. They knew that a sentence to confinement was inevitable, and they actively sought to bargain away a few months in the brig in exchange for a promise for a suspended bad-conduct discharge. Frankly, that was smart thinking, and I do not fault either the defense counsel's or appellant's judgment. Likewise, I do not fault the convening authority for entering into such an agreement. He needed a sentence severe enough to deter similar misconduct by other members of his command. His agreement evidenced that he saw that the appellant had demonstrated that he might have some rehabilitative potential, but he simply was not content with keeping the appellant in the Navy unless he "paid his dues" by serving at least four months confinement—and sent the appropriate message to others in the command who would see what was happening to the appellant. Additionally, I suspect that the convening authority was fully aware of the appellant's efforts to assist law enforcement personnel, and that the convening authority saw the value in providing some encouragement to any member of his command willing to assist in the war against drug dealers. Stated otherwise, the parties to the agreement had commendatory reasons for entering the agreement, and I think it unfair to label their decision regarding sentencing to be "against public policy" or "fundamentally unfair." In particular, I would not do so under the guise that the provision at issue would have a "chilling effect" on the defense effort to mitigate punishment.

2. A judge takes a big step when he or she concludes, *sua sponte*, that a particular course of action is contrary to public policy or fundamentally unfair. What led this judge to that conclusion? I find neither case law, statutory law, regulatory law, or extant statement of public policy requiring such a conclusion. I suspect that the judge was miffed because he had been bamboo-

zled by trial counsel's argument urging him to grant leniency to the appellant by adjudging only three months' confinement. As any experienced military counsel knows, such an argument by trial counsel for a limited period of time based upon asserted helpfulness to the government normally places a *de facto* cap on the sentence adjudged because most judges do not want to appear Draconian.

3. I share Judge Mollison's concern with trial counsel's lack of candor in this case. There is but one term to define his argument: sophism. A bad-conduct discharge is recognized as the most serious punishment a special court-martial may adjudge. In essence, trial counsel represented that a sentence including three months confinement would be more lenient than one containing longer confinement, as requested by the defense counsel. This case has become problematic because of trial counsel's gamesmanship.

4. I do not like the idea of an air controller using drugs any more than the trial judge and convening authority. However, my experience leads me to conclude that courts must be willing to assist law enforcement personnel with their tough but important task of preventing and detecting crime by giving some form of "credit" to individuals who admit their sins and provide assistance to law enforcement personnel. I also know that service personnel who become "co-operative witnesses" frequently do so under conditions that subject them and their families to personal risk and considerable stress. The convening authority, a senior commanding officer, apparently felt the same way because he entered into an agreement that would authorize the appellant to receive a second chance to serve with honor in the U.S. Navy if the appellant received a sentence to confinement in excess of four months. At trial, after reading the compete PTA, the judge was powerless to increase the term of confinement, so he made a comment in the record indicating his desire that the convening authority set matters straight. The convening authority's action was taken by an officer who was, apparently, the successor in command of the original convening

authority. For whatever reason, that officer took no action consonant with the obvious intent of the trial judge.

5. Faced with the situation described above and the lack of dispositive case law, I apply the rule of lenity in favor of the accused. While I do not second-guess the judge's decision to adjudge a bad-conduct discharge, I do second-guess the decision not to suspend the execution of the discharge. Taking all factors into consideration, I believe this Court should take a direct route toward a just result and disapprove the bad-conduct discharge.