# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM S32424**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Darrion A. HOARD**
Airman Basic (E-1), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 31 January 2018

————————————

*Military Judge:* Matthew S. Ward.

*Approved sentence:* Bad-conduct discharge, confinement for six months, and a reprimand. Sentence adjudged 19 July 2016 by SpCM convened at Minot Air Force Base, North Dakota.

*For Appellant:* Major Annie W. Morgan, USAF; Captain Patrick A. Clary, USAF.

*For Appellee:* Major Amanda L.K. Linares, USAF; Major Mary Ellen Payne, USAF; Major Meredith L. Steer, USAF; Gerald R. Bruce, Esquire.

Before HARDING, SPERANZA, and HUYGEN, *Appellate Military Judges.*

Senior Judge HARDING delivered the opinion of the court, in which Judges SPERANZA and HUYGEN joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

HARDING, Senior Judge:

In accordance with his pleas pursuant to a pretrial agreement (PTA), a military judge found Appellant guilty of one specification of attempted larceny of military property (a night vision device) in violation of Article 80, Uniform

Code of Military Justice (UCMJ), 10 U.S.C. § 880; two specifications of conspiracy (to steal and sell military property) in violation of Article 81, UCMJ, 10 U.S.C. § 881; one specification of unauthorized sale of military property (four gunsights) in violation of Article 108, UCMJ, 10 U.S.C. § 908; and one specification of larceny of military property (four gunsights) in violation of Article 121, UCMJ, 10 U.S.C. § 921. The military judge sentenced Appellant to a bad-conduct discharge, confinement for six months, and a reprimand. The convening authority approved the sentence as adjudged.

Appellant asserts the terms of his PTA required him to forfeit the marital privilege in violation of public policy. We disagree, find no prejudicial error, and affirm.

## I. BACKGROUND

Appellant conspired with his wife, A1C KB, to steal military property of a combined value greater than $5,000.00 and then to sell the stolen military property online. In furtherance of their conspiracy, Appellant and A1C KB successfully stole and then sold four advanced combat optical gunsights. Their attempt to steal a night vision device failed.

Prior to trial, Appellant and the convening authority entered into a PTA in which Appellant agreed to plead guilty and offered, among other terms, to cooperate in the investigation and prosecution of A1C KB. In exchange, the convening authority agreed to limit the amount of confinement he would approve. Appellant now seeks to have this court find the following terms of the PTA to violate public policy:

> Upon a grant of immunity from the General Court Martial Convening Authority . . . to truthfully answer any questions posed to me by counsel pertaining to, and to testify at any proceeding held pursuant to the Uniform Code of Military Justice (10 U.S.C. § 801, et seq.), concerning any offenses alleged against A1C [KB], to the extent I have knowledge of such offenses.

> To truthfully answer any questions posed to me by counsel pertaining to, and to assist counsel in the recovery efforts of, any stolen property of the United States Air Force of which I have knowledge, any stolen property of the United States Air Force as it pertains to this offer is specific to property specified in the Charges preferred against me on 10 May 2016, and any specific property in which I have knowledge that A1C [KB] has any involvement with.

## II. DISCUSSION

Appellant argues three bases for why the challenged PTA terms should not be enforced. First, Appellant characterizes the language that would require him to testify against his spouse as being facially inconsistent with the spousal incapacity privilege and improper compulsion. Second, Appellant argues the terms are contrary to the public policy goal of encouraging marital harmony. Finally, Appellant contends that, even if he waived his spousal incapacity by agreeing to the terms, A1C KB's potentially successful invocation of *her* confidential communications privilege would frustrate Appellant's ability to fulfill *his* obligations under the PTA. We are not persuaded by any of these arguments. We have reviewed the PTA and the military judge's inquiry regarding Appellant's understanding of and voluntary decision to enter into it. We conclude, as did the military judge, that the PTA and the challenged terms in particular are in substantial compliance with law and regulation; that Appellant voluntarily entered into the PTA; and that the PTA and its terms are not contrary to public policy.

### A. Voluntary Waiver of Marital Privilege

Rule for Courts-Martial (R.C.M.) 705(c)(1) expressly prohibits terms or conditions of a PTA that are not voluntary or that deprive an accused of certain rights. "The interpretation of a pretrial agreement is a question of law, which is reviewed under a de novo standard." *United States v. Acevedo*, 50 M.J. 169, 172 (C.A.A.F. 1999).

A PTA may include "[a] promise to testify as a witness in the trial of another person." R.C.M. 705(c)(2)(B). "[N]o practice is more ingrained in our criminal justice system than the practice of the government calling a witness who is an accessory to the crime for which the defendant is charged and having that witness testify under a plea bargain that promises him a reduced sentence." *United States v. Singleton*, 165 F.3d 1297, 1301 (10th Cir. 1999) (alteration in original) (citations omitted). The challenged PTA terms fall squarely into this permissible category. An additional consideration in Appellant's case is, given that the person he promised to testify against is his spouse, whether marital privilege impacts the interpretation or propriety of the terms.

As a general matter, a term of a PTA is not per se impermissible because it requires waiver of a testimonial privilege. Criminal defendants may knowingly and voluntarily waive many rights and Constitutional protections. *See, e.g.*, *Ricketts v. Adamson*, 483 U.S. 1, 10 (1987); *Boykin v. Alabama*, 395 U.S. 238, 243 (1969); *Johnson v. Zerbst*, 304 U.S. 458, 465 (1938). Further, the United States Supreme Court has held that "absent some affirmative indication of Congress' intent to preclude waiver, we have presumed that statutory provisions are subject to waiver by voluntary agreement of the parties." *United States v. Mezzanatto*, 513 U.S. 196, 201 (1995). In particular, the United States

Court of Appeals for the Armed Forces (CAAF) has held that waiver of evidentiary objections is a permissible term of a PTA. *United States v. Gibson*, 29 M.J. 379 (C.M.A. 1990). A claim of privilege is essentially an evidentiary objection to the admission of privileged evidence. In that sense, waiver of a testimonial privilege is a waiver of an evidentiary objection to the admission of privileged evidence.

Marital privilege is articulated in Military Rule of Evidence (Mil. R. Evid.) 504 as two distinct privileges: the privilege to refuse to testify against one's spouse (spousal incapacity) and the privilege to refuse to disclose, or prevent another from disclosing, any confidential communication made to the spouse of the person. "[T]he witness-spouse alone has a [spousal-incapacity] privilege to refuse to testify adversely; the witness may be neither compelled to testify nor foreclosed from testifying." *Trammel v. United States*, 445 U.S. 40, 53 (1980). In contrast, the confidential communication privilege may be claimed by the spouse who made the statement or by the other spouse who heard it.

Although the challenged terms of the PTA did not expressly use the terminology of Mil. R. Evid. 504 and the marital privilege and did not squarely address waiver of any such privilege, both terms clearly named Appellant's spouse, A1C KB, as a subject for investigation and future prosecution. Appellant's offer to answer questions, testify at any UCMJ proceeding, and otherwise cooperate concerning any offenses alleged against his spouse carried with it an implicit waiver of future claims *by Appellant* of marital privilege concerning those offenses. To conclude otherwise would render the term devoid of any consideration from Appellant in exchange for favorable action by the convening authority.

In *Trammel*, the petitioner's spouse chose to testify against him. The Supreme Court concluded "[t]hat she did so after a grant of immunity and assurances of lenient treatment [did] not render her testimony involuntary." 445 U.S. at 53 (alteration in original). Likewise, Appellant's offer to testify against A1C KB in exchange for favorable action by the convening authority did not render the implicit waiver of marital privilege a product of compulsion. Further, Appellant stated during the PTA inquiry that he entered the PTA voluntarily and that no one forced or coerced him into making the offer to plead guilty. We find no evidence in the record that Appellant was "compelled" or coerced into waiving his spousal incapacity privilege. Instead, Appellant voluntarily exchanged testimony against his spouse for the PTA's benefit to him of a cap on confinement. In effect, he voluntarily waived the marital privilege to the extent he could invoke spousal incapacity or claim the confidential communications privilege on behalf of A1C KB.

**B. Public Policy and Marital Harmony**

Appellant argues the PTA terms must be nullified because they are contrary to the public-policy goal of "encouraging marital harmony." We disagree.

This court has adopted the principle that terms in a PTA are contrary to public policy if they "interfere with court-martial fact-finding, sentencing, or review functions or undermine public confidence in the integrity and fairness of the disciplinary process." *United States v. Raynor*, 66 M.J. 693, 697 (A.F. Ct. Crim. App. 2008) (quoting *United States v. Cassity*, 36 M.J. 759, 762 (N.M.C.M.R. 1992)); *United States v. Mitchell*, 15 M.J. 238, 240–41 (C.M.A. 1983). Applying this principle, we observe that in some respects it is the marital privilege itself that must be justified as not contrary to public policy. Indeed, evidentiary rules of privilege may interfere with court-martial functions or undermine public confidence by rendering otherwise relevant and reliable evidence inadmissible. In *Trammel,* the Supreme Court considered whether the privilege against adverse spousal testimony promotes sufficiently important interests to outweigh the need for probative evidence in the administration of criminal justice. 445 U.S. at 51. The Court recognized the scholarly debate that "testimonial exclusionary rules and privileges contravene the fundamental principle that the public . . . has a right to every man's evidence" and the notion that the privilege "must be strictly construed and accepted only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." The Court then concluded that vesting the privilege to testify adversely in the witness-spouse alone "furthers the important public interest in marital harmony without unduly burdening legitimate law enforcement needs." *Id.* at 50–53 (internal quotation marks and citations omitted).

Turning to the terms in Appellant's PTA, we note waiver of the marital privilege permits law enforcement, investigators, and prosecutors to use "all rational means for ascertaining truth" regarding larceny and illegal sale of military property. *Id.* at 50 (quoting *Elkins v. United States*, 364 U.S. 206, 234 (1960)). Rather than interfering with a court-martial function or the integrity of the disciplinary process, the waiver of Appellant's marital privilege furthers the truth-seeking function and thus advances the public policy goals identified in *Raynor*. In addition, the waiver reflected Appellant's own balancing of his best interests and marital harmony with A1C KB. As the Supreme Court observed in *Trammel*, "[w]hen one spouse is willing to testify against the other in a criminal proceeding – whatever the motivation – their relationship is almost certainly in disrepair; there is probably little in the way of marital harmony for the privilege to preserve." *Id.* at 52. In this instance, Appellant chose his interests over those of his spouse. Rather than being against public policy

as claimed by Appellant, allowing a witness-spouse this voluntary choice reflects the resolution of the competing public policy interests.

Were we to do as Appellant requests and categorically declare as prohibited all PTA terms that explicitly or implicitly include waiver of marital privilege, such a restriction would tend to work to the detriment of an accused. *United States v. Rivera*, 46 M.J. 52, 54 (C.A.A.F. 1997). "A defendant can 'maximize' what he has to 'sell' only if he is permitted to offer what the prosecutor is most interested in buying." *Mezzanatto*, 513 U.S. at 208. R.C.M. 705(c)(1)(B) specifies what an accused cannot offer and does not remove the marital privilege as a potential bargaining chip.

Appellant argues a third basis for voiding the terms of the PTA. Appellant speculates that A1C KB, by invoking *her* privilege for confidential communications made during their marriage, could potentially prevent Appellant from fulfilling *his* obligations to answer questions and testify. Because of this possibility, Appellant argues the challenged terms of the PTA should be voided. We disagree. Even if we assume the privilege applies,* it hardly follows that Appellant has not satisfied the PTA terms because A1C KB successfully asserts her privilege. The PTA terms require Appellant to answer questions posed by counsel and to testify. They do not require A1C KB to do or not do anything or guarantee the admissibility of Appellant's testimony.

### III. CONCLUSION

The findings of guilt and the sentence are correct in law and fact and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

KATHLEEN M. POTTER
Acting Clerk of the Court

---

* An exception to the confidential communications privilege potentially narrows the scope of any claim of marital privilege by A1C KB. Mil. R. Evid. 504(c)(1) provides that "where both parties have been substantial participants in illegal activity, those communications between the spouses during the marriage regarding the illegal activity in which they have jointly participated are not marital communications for purposes of the [confidential communications] privilege."