# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

––––––––––––––––––

**No. ACM 40358**

––––––––––––––––––

**UNITED STATES**
*Appellee*

**v.**

**Chad L. REEDY**
Technical Sergeant (E-6), U.S. Air Force, *Appellant*

––––––––––––––––––

Appeal from the United States Air Force Trial Judiciary

Decided 2 February 2024

––––––––––––––––––

*Military Judge*: Bryon T. Gleisner (Article 30a proceedings); Pilar G. Wennrich (Article 30a proceedings); Lance R. Smith.

*Sentence*: Sentence adjudged 15 June 2022 by GCM convened at Royal Air Force Mildenhall, United Kingdom. Sentence entered by military judge on 20 July 2022: Dishonorable discharge, confinement for 225 days, reduction to E-1, and a reprimand.

*For Appellant*: Major Matthew L. Blyth, USAF.

*For Appellee*: Captain Vanessa Bairos, USAF; Captain Olivia B. Hoff, USAF; Mary Ellen Payne, Esquire.

Before RICHARDSON, DOUGLAS, and MASON, *Appellate Military Judges*.

Judge MASON delivered the opinion of the court, in which Senior Judge RICHARDSON and Judge DOUGLAS joined.

––––––––––––––––––

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

––––––––––––––––––

MASON, Judge:

A military judge sitting as a general court-martial convicted Appellant, in accordance with his pleas and pursuant to a plea agreement, of one charge with one specification of possession of child pornography in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934.[1] The military judge sentenced Appellant to a dishonorable discharge, confinement for 225 days, reduction to the grade of E-1, and a reprimand. The convening authority took no action on the findings. He approved the sentence in its entirety and denied Appellant's request for deferment of reduction in rank for six months, but granted Appellant's requested waiver of automatic forfeitures for six months and directed the forfeitures be paid to Appellant's spouse.

Appellant raises three issues on appeal: (1) whether a plea agreement requiring a dishonorable discharge renders the sentencing proceedings an "empty ritual" and thus violates public policy; (2) whether a plea agreement that conditions dismissal with prejudice upon completion of appellate review is unenforceable; and (3) whether the record of trial's omission of the court-martial audio is a substantial omission warranting relief.

We have carefully considered issue (2) and find Appellant is not entitled to relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987); *see also United States v. Goldsmith*, No. ACM 40148, 2023 CCA LEXIS 8, at *14–15 (A.F. Ct. Crim. App. 11 Jan. 2023) (unpub. op.) (finding plea agreement term requiring the convening authority to dismiss the additional charges and specifications with prejudice "upon completion of appellate review where the findings and sentence have been upheld" permissible because it did not violate law or public policy). Regarding the remaining issues, we find no error that materially prejudices a substantial right of Appellant and affirm the findings and sentence.

## I. BACKGROUND

From 30 September 2018 to 1 September 2020, Appellant possessed child pornography in the form of photos and videos depicting actual minors engaged in sexually explicit conduct and obscene depictions of animated minors performing sexual acts. Appellant's conduct was uncovered after images shared online were flagged by an online service provider and forwarded to law enforcement.

Appellant was charged with two specifications of distribution of child pornography and one specification of possession of child pornography. On 1 June

---

[1] Unless otherwise noted, all references in this opinion to the UCMJ and Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2019 ed.).

2022, Appellant submitted an offer for plea agreement wherein he offered to plead guilty to the possession specification. Appellant offered a sentencing range that set a confinement minimum to be adjudged as 180 days, a confinement maximum to be adjudged as 240 days, and required that a dishonorable discharge be adjudged. There were to be no other limitations or conditions on the sentence to be adjudged apart from those normally prescribed by the *Manual for Courts-Martial*. On 2 June 2022, the convening authority accepted Appellant's offer for a plea agreement.

At trial, the military judge conducted a full inquiry regarding the plea agreement including an inquiry into the provision requiring any sentence adjudged including a dishonorable discharge. Appellant confirmed his understanding of this provision. Appellant confirmed that he understood the ramifications of a dishonorable discharge and that he had an "express desire to be discharged from the service with a dishonorable discharge." Moreover, the military judge confirmed that Appellant understood that if the plea agreement were accepted, the military judge as sentencing authority would have no discretion, and the military judge would have to include a dishonorable discharge in the adjudged sentence. The military judge asked trial counsel and trial defense counsel if they agreed that this provision did not violate law or public policy. They agreed.

When the military judge finished reviewing the plea agreement, he asked trial counsel and trial defense counsel if they concurred with his interpretation of the plea agreement. All counsel confirmed that they agreed, and the military judge accepted the plea agreement.

Shortly after trial, the detailed court reporter provided a compact disc (CD) containing the audio recording of the proceedings to the Government's case paralegal. The court reporter retained a digital file of the audio recording on a hard drive so she could use that recording to prepare a transcription of the proceedings. She finished the transcription on 6 July 2022, and then promptly forwarded it to trial counsel and trial defense counsel for review. On 15 July 2022, she received the revisions back from trial defense counsel. The court reporter finalized the transcript and signed the certification of its accuracy that day.

At some point during the next month, the court reporter's hard drive crashed. As a result, all digital files contained on the hard drive were rendered irretrievable. The court reporter turned the hard drive over to her local communications squadron, where two unsuccessful attempts were made to retrieve the applicable files.

On 30 August 2022, the case paralegal was compiling the record of trial and attempted to access the audio recording utilizing the CD provided to her by the

court reporter. However, the digital files containing the audio recording of the proceedings were not accessible. After several attempts to access the audio files by the case paralegal and members of her local communications squadron, the audio recording of the proceedings remained inaccessible from the CD. The case paralegal contacted the court reporter and was advised of the mishap with her hard drive.

## II. DISCUSSION

### A. Plea Agreement to Adjudge a Dishonorable Discharge

#### 1. Law

We review questions of interpretation of plea agreements de novo, as such are questions of law. *See United States v. Lundy*, 63 M.J. 299, 301 (C.A.A.F. 2006) (citing *United States v. Acevedo*, 51 M.J. 169, 172 (C.A.A.F. 1999)) (applying de novo review to pretrial agreements). The standard is the same in our assessment of whether a plea agreement's terms violate the Rules for Courts-Martial. *See United States v. Hunter*, 65 M.J. 399, 401 (C.A.A.F. 2008).

Article 53a, UCMJ, 10 U.S.C. § 853a, permits the use of plea agreements in courts-martial. In those agreements, a convening authority and an accused "may enter into a plea agreement with respect to such matters as—(A) the manner in which the convening authority will dispose of one or more charges and specifications; and (B) limitations on the sentence that may be adjudged for one or more charges and specifications." 10 U.S.C. § 853a(a)(1)(A), (B).

Rule for Courts-Martial (R.C.M.) 705 sets forth additional regulations regarding plea agreements. R.C.M. 705(d)(1) through (3) state that plea agreements limiting the sentence that can be adjudged by a court-martial for one or more charges and specifications may contain limitations on the maximum punishment, the minimum punishment that may be imposed by the court-martial, or both. R.C.M. 705(c)(1)(B) states that certain terms and conditions regarding deprivation of certain rights may not be in plea agreements. Amongst those is "the right to complete presentencing proceedings." *Id.*

"To ensure that the record reflects the accused understands the pretrial agreement [or plea agreement] and that both the Government and the accused agree to its terms, the military judge must ascertain the understanding of each party during the inquiry into the providence of the plea." *United States v. Cron*, 73 M.J. 718, 729 (A.F. Ct. Crim. App. 2014) (citation omitted).

A military judge must reject any plea agreement which is prohibited by law, or is contrary to or inconsistent with applicable guidance as set forth in the *Manual for Courts-Martial* with respect to terms, conditions, or other aspects of plea agreements. 10 U.S.C. § 853a(b)(4), (5). "To the extent that a term

in a pretrial agreement violates public policy, it will be stricken from the pretrial agreement and not enforced." *United States v. Edwards*, 58 M.J. 49, 52 (C.A.A.F. 2003) (citing R.C.M. 705(c)(1)(B)) (additional citation omitted).

"In sentencing an accused under . . . [Article 53, UCMJ], a court-martial shall impose punishment that is sufficient, but not greater than necessary, to promote justice and to maintain good order and discipline in the armed forces . . . ." 10 U.S.C. § 856(c)(1). Pretrial agreements or plea agreements which have the effect of transforming sentencing proceedings into "an empty ritual" are impermissible. *See, e.g.*, *United States v. Davis*, 50 M.J. 426, 429 (C.A.A.F. 1999) (quoting *United States v. Allen*, 25 C.M.R. 8, 11 (C.M.A. 1957)) (describing this premise as a "fundamental principle" in military jurisprudence). "A term or condition in a plea agreement shall not be enforced if it deprives the accused of . . . the right to complete presentencing proceedings" and "the complete and effective exercise of post-trial and appellate rights." R.C.M. 705(c)(1)(B).

"A [pretrial agreement] creates a constitutional contract between the accused and the convening authority wherein the accused agrees to waive constitutional rights in exchange for a benefit." *Cron*, 73 M.J. at 729 (citation omitted). "However, due process concerns outweigh the contract principles as 'the [G]overnment is bound to keep its constitutional promises.'" *Id.* (citation omitted). "To that end, a provision that denies the accused a fair hearing or otherwise 'substitutes the agreement for the trial, [thereby] render[ing it] an empty ritual' violates public policy." *Id.* (alterations in original) (citations omitted). "It is the military judge's responsibility to police the terms of pretrial agreements to [e]nsure compliance with statutory and decisional law as well as adherence to basic notions of fundamental fairness." *Id.* (quoting *United States v. Riley*, 72 M.J. 115, 120 (C.A.A.F. 2013)).

"This court has adopted the principle that terms in a . . . [pretrial agreement] are contrary to public policy if they 'interfere with court-martial factfinding, sentencing, or review functions or undermine public confidence in the integrity and fairness of the disciplinary process.'" *United States v. Hoard*, No. ACM S32424, 2018 CCA LEXIS 49, at *8 (A.F. Ct. Crim. App. 31 Jan. 2018) (unpub. op.) (citing *United States v. Raynor*, 66 M.J. 693, 697 (A.F. Ct. Crim. App. 2008) (quoting *United States v. Cassity*, 36 M.J. 759, 762 (N.M.C.M.R. 1992))).

This court has found that plea agreement provisions requiring a military judge to sentence an appellant to a punitive discharge did not violate the United States Constitution, UCMJ, or public policy. *See United States v. Kroetz*, No. ACM 40301, 2023 LEXIS 450, at *17 (A.F. Ct. Crim. App. 27 Oct. 2023) (unpub. op.); *United States v. Geier*, No. ACM S32679 (f rev), 2022 CCA

LEXIS 468, at \*13 (A.F. Ct. Crim. App. 2 Aug. 2022) (unpub. op.), *rev denied*, 83 M.J. 86 (C.A.A.F. 2022).

### 2. Analysis

On appeal, for the first time, Appellant argues that the plea agreement provision requiring a minimum sentence include a dishonorable discharge was prohibited by law or prohibited by public policy. We disagree.

R.C.M. 705 expressly authorizes not only maximum punishment limits, but also minimum punishment limits. Therefore, Appellant's plea agreement provision requiring a minimum sentence of a dishonorable discharge is not prohibited by law; instead, it is a permitted term authorized by R.C.M. 705(d)(1).

Despite R.C.M. 705 expressly permitting limitations on the minimum punishment in a plea agreement, Appellant claims that his plea agreement mandating dishonorable discharge "hollowed out the presentencing proceeding and deprived [him] of his opportunity to secure a fair and just sentence" and was therefore against public policy.

Appellant avers that because Congress chose not to make the offense of which Appellant was convicted carry a "mandatory dishonorable discharge," a plea agreement to a dishonorable discharge violates public policy. *See* 10 U.S.C. § 856(b) (listing offenses which carry sentence minimums). Appellant argues "statutes codified by the legislature and rules enacted pursuant to those laws by the executive, are *public policy*." (Emphasis added). Therefore, Appellant claims public policy dictates plea agreements may not mandate a dishonorable discharge for non-listed offenses.

The military judge discussed this matter during the guilty plea inquiry. After he did so, both trial counsel and trial defense counsel concurred that this provision did not violate public policy prior to the military judge's acceptance of this plea agreement.

While we are aware that additional changes to the Military Justice Act of 2016[2] included minimum sentences for certain offenses, we reject Appellant's suggestion that because no minimum sentence existed for Appellant's offenses under law, it is impermissible to have a minimum sentence in a plea agreement. We are not convinced Congress intended to limit plea agreements for offenses they did not list as having mandatory minimums. To hold otherwise is to render inoperable the language in R.C.M. 705(d) that permits plea-agreement limitations on minimum punishments that may be imposed by the court-martial.

---

[2] Pub. L. No. 114-328, §§ 5001-5542, 130 Stat. 2943 (23 Dec. 2016).

To further his public policy argument, Appellant asks this court to find that the dishonorable discharge clause violates public policy because it "prevents the sentencing authority from adjudging—*in its sole discretion*—a punishment that is *sufficient, but not greater than necessary*," and therefore is inconsistent with the mandate of Article 56(c), UCMJ, 10 U.S.C. § 856(c)(1) (second emphasis added). Appellant's argument implies that no minimum sentence could be agreed to in a plea agreement, because doing so would take away the sentencing authority's *sole discretion* to determine what is both sufficient and necessary.

We find no "sole discretion" requirement written into Article 56(c), UCMJ. Any plea agreement with a limitation on sentence by its nature removes some of the sentencing authority's discretion. While the sentencing authority's minimum and maximum sentence options were limited by the plea agreement—instead of limited solely by statute and executive order—within those parameters, the military judge still had "sole discretion" to determine what punishment is sufficient and necessary considering the nature and the circumstances of the offense, the impact of the offense, and the need for the sentence to accomplish other requirements in Article 56, UCMJ.[3]

The military justice system is evolving, and new sentencing proceedings are different from previous practice. R.C.M 705(d)(1) was re-written, in part, to allow plea agreements to contain minimum punishments, along with maximum punishments. "The fact that military justice evolves is not . . . against public policy." *United States v. Rivero*, 82 M.J. 629, 635 (N.M. Ct. Crim. App. 2022) (finding that appellant's plea agreement punishment limitations did not render sentencing proceedings meaningless, and therefore did not violate public policy), *rev. denied*, 83 M.J. 35 (C.A.A.F. 2022). Appellant exercised a relatively new option to agree to a minimum sentence in exchange for other terms in the plea agreement. Appellant was free to not sign the plea agreement. Appellant and the convening authority were also free to agree to other factors such as stipulated facts and pleas to various offenses. The sentencing proceeding provided Appellant an opportunity to put forward evidence in mitigation

---

[3] Article 56, UCMJ, indicates:

> a court-martial shall impose punishment . . . taking into consideration the need for the sentence—(i) to reflect on the seriousness of the offense; (ii) to promote respect for the law; (iii) to provide just punishment for the offense; (iv) to promote adequate deterrence of misconduct; (v) to protect others from further crimes by the accused; (vi) to rehabilitate the accused; and (vii) to provide, in appropriate cases, the opportunity for retraining and return to duty to meet the needs of the service.

10 U.S.C. § 856(c)(1)(C).

and extenuation, call witnesses, and provide argument, including whether any sentence component was appropriate. Additionally, the military judge still had latitude with other punishment options, to include the term of confinement between 180 and 240 days.

Given all the options still available to Appellant and the sentencing authority, the plea agreement in this case did not preclude the sentencing authority's ability to determine a sentence that was sufficient and necessary, but not greater than necessary, to promote justice and to maintain good order and discipline in the armed forces, taking into consideration other aspects of Article 56, UCMJ.

In conclusion, Appellant's plea agreement term regarding a dishonorable discharge was not prohibited by law or public policy. It did not deprive Appellant of his opportunity to secure a fair and just sentence, nor did it render the sentencing proceeding an "empty ritual." Therefore, no relief is warranted.

## B. Missing Audio Recording

### 1. Law

"Proper completion of post-trial processing is a question of law this court reviews de novo." *United States v. Valentin-Andino*, 83 M.J. 537, 540 (A.F. Ct. Crim. App. 2023) (citation omitted). "Because they are matters of law, we review interpretations of statutes and Rules for Courts-Martial de novo." *Id.* (citation omitted).

Article 54, UCMJ, requires the keeping of a record of proceedings in each general or special court-martial. It states that "[i]n accordance with regulations prescribed by the President, a complete record of proceedings and testimony shall be prepared in any case of a sentence of death, dismissal, discharge, confinement for more than six months, or forfeiture of pay for more than six months." 10 U.S.C. § 854.

Article 1, UCMJ, defines the term "record," when used in connection with the proceedings of a court-martial, as either: "(A) an official written transcript, written summary, or other writing relating to the proceedings; or (B) an official audiotape, videotape, or similar material from which sound, or sound and visual images, depicting the proceedings may be reproduced." 10 U.S.C. § 801(13)(A), (B).

In R.C.M. 1112(b), the President lists the required contents of the record of trial. Amongst those contents that shall be included is "[a] substantially verbatim recording of the court-martial proceedings except sessions closed for deliberations and voting." R.C.M. 1112(b)(1).

R.C.M. 1112(f) identifies items a court reporter must attach to the record of trial when it is sent to The Judge Advocate General for appellate review.

One of those items is "[a]ny transcription of the court-martial proceedings created pursuant to R.C.M. 1114." R.C.M. 1112(f)(8).

R.C.M. 1114 states:

> A certified verbatim transcript of the record of trial shall be prepared—
>
> (1) When the judgment entered into the record includes a sentence of death, dismissal of a commissioned officer, cadet, or midshipman, a dishonorable or bad-conduct discharge, or confinement for more than six months; or
>
> (2) As otherwise required by court rule, court order or under regulations prescribed by the Secretary concerned.

Department of the Air Force Instruction 51-201, *Administration of Military Justice*, ¶ 15.12 (28 Sep. 2023), states that transcription requirements for Article 30(a), UCMJ, 10 U.S.C. § 830(a), proceedings and courts-martial are set forth in Department of the Air Force Manual (DAFMAN) 51-203, *Records of Trial* (12 Apr. 2021).

DAFMAN 51-203 provides technical guidance on compiling records of trial (ROT). It states, "[a] completed ROT consists of two parts: the required contents of the certified ROT as listed in R.C.M. 1112(b) . . . and the required ROT Attachments (R.C.M. 1112(f)) and allied papers required by this manual . . . ." DAFMAN 51-203, ¶ 1.4.

"A substantial omission renders a record of trial incomplete and raises a presumption of prejudice that the Government must rebut." *United States v. Henry*, 53 M.J. 108, 111 (C.A.A.F. 2000) (citations omitted). "Insubstantial omissions from a record of trial do not raise a presumption of prejudice or affect that record's characterization as a complete one." *Id.* The threshold question is whether the item is substantial, either qualitatively or quantitatively. *United States v. Davenport*, 73 M.J. 373, 377 (C.A.A.F. 2014) (citing *United States v. Lashley*, 14 M.J. 7, 9 (C.M.A. 1982)). Omissions may be quantitatively insubstantial when in light of the entire record the omission is "so unimportant and so uninfluential . . . that it approaches nothingness." *Id.* (omission in original) (citation omitted).

### 2. Analysis

The court reporter in this case created an audio recording of the court-martial proceedings. This audio recording is not included in the record of trial. Rather, it is irretrievable due to the combination of the court reporter's hard drive crashing and the digital files on the CD with the case paralegal being inaccessible. As a result, Appellant argues that the record is not complete and therefore we should reduce his sentence by changing the dishonorable discharge to

a bad-conduct discharge. Appellant is not entitled to this reduction because there is no omission in the record of trial, let alone a substantial omission.

Both Article 54, UCMJ, and R.C.M. 1112 require the compilation of a record of trial. Appellant argues "[t]he absence of *any* court-martial audio renders the record incomplete" regardless of whether a written transcript is included. However, R.C.M. 1112(b) states the record of trial must contain "[a] substantially verbatim recording of the court-martial proceedings." For a court-martial like Appellant's, Article 1, UCMJ, defines "record" as *either* the transcript *or* the audio recording. 10 U.S.C. § 801. Though it is often that both are included in Air Force records of trial, there are instances where both are required and instances where they are not. In this case, the Government compiled a record of trial and utilized a certified transcription of the court-martial proceedings to meet the applicable requirements. This is sufficient. Thus, no omission exists in the record, at least as far as what is required to be included with this record of trial.

Even assuming *arguendo* that the absence of the audio recording in the record of trial amounted to an omission, such omission was insubstantial as the certified transcription is available for all to reference. Trial defense counsel was provided an opportunity to and did, in fact, review the prepared transcription and provide revisions before it was finalized and certified by the court reporter. Appellant concedes that he has "no reason to question its contents." Yet, he urges us to exercise our broad authority under Article 66, UCMJ, 10 U.S.C. § 866, to provide his requested relief without substantiating how the lack of audio recording materially prejudiced any of his rights or negatively impacted him any particular way. We decline to provide relief under these circumstances.

## III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of the Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED.**

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court